|  |  |  |
|---|---|---|
| BARRY AHURUONYE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 16-1767 (RBW) |
| | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
| INTERIOR, <u>et al.</u>, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## <u>MEMORANDUM OPINION</u>

Barry Ahuruonye, the <u>pro se</u> plaintiff, brings this civil action against the defendants, the

United States Department of Interior ("Department of Interior"), the Merit Systems Protection

Board ("MSPB"), the United States Department of Justice, and multiple employees of the

Department of Interior, asserting violations of various employment and criminal laws, the

Privacy Act, the First and Fifth Amendments to the United States Constitution, the Declaratory

Judgment Act, the All Writs Act, and the Administrative Procedure Act (the "APA"). <u>See</u>

<u>generally</u> Consolidated Complaints: Case No. 16-cv-1767; Case No. 16-cv-2028; Case No.

17-cv-284 ("Compl."), ECF No. 30. Currently pending before the Court are the Defendants'

Motion to Dismiss the Consolidated Complaint for Lack of Subject[-]Matter Jurisdiction and for

Failure to State a Claim ("Defs.' Mot."), ECF No. 36, the plaintiff's Motion for Preliminary

Injunction Relief ("Pl.'s Mot."), ECF No. 35, the Plaintiff['s] Motion for Sanctions Under

Federal Rule 11 for Patricia K. McBride['] Fraud ("Pl.'s Sanctions Mot."), ECF No. 44, and the

Plaintiff[']s Response Motion for Sanctions and Striking Out a Fraudulent ECF [Nos.] 36 & 41

("Pl.'s Sanctions Reply"), ECF No. 49. Upon consideration of the parties' submissions,[1] the Court concludes for the following reasons that it must grant in part and deny in part the defendants' motion to dismiss and deny the plaintiff's motion for preliminary injunctive relief, motion for sanctions, and motion to strike.

## I. BACKGROUND[2]

In December 2011, the plaintiff "was appointed to a GS-12 Grants Management Specialist position" with the United States Fish and Wildlife Service, an agency within the Department of Interior. Defs.' Mot., Exhibit ("Ex.") 1 (Initial Decision (Feb. 5, 2016)) at 2. "In November[] 2012, the [plaintiff] filed a complaint with the Department of Interior Office of Inspector General [ ], alleging that his supervisor, Penny Bartnicki[,] engaged in illegal grant awards . . . ." Id. "Shortly after the [plaintiff] filed [that] complaint, [ ] Bartnicki proposed the [plaintiff's] termination as a probationary employee." Id. On April 15, 2013, the plaintiff and the Department of Interior "settled the [plaintiff's] appeal of [his] removal [ ], and the [plaintiff] was reinstated." Id. After his reinstatement, the plaintiff "raised numerous claims against the [Department of Interior] and [ ] Bartnicki, alleging whistleblowing retaliation and discrimination." Id.; see also id. at 3–4 (listing various adverse employment actions that the plaintiff appealed to the MSPB, including the issuance of a letter of reprimand, poor performance reviews, and wage-increase denials). On March 26, 2015, the plaintiff was issued a notice of

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Plaintiff['s] Motion to Deny the Defendants['] Motion to Dismiss the Consolidated [Complaint] ("Pl.'s Opp'n"); (2) the Reply in Support of Defendants' Motion to Dismiss and Opposition to Plaintiff's Motion for Sanctions ("Defs.' Reply"); (3) the Defendants' Opposition to Plaintiff's Motion for Injunctive Relief ("Defs.' Opp'n"); and (4) the Plaintiff['s] Response to Defendants['] Opposition to Motion for Preliminary Injunction Under Rule 60(b) ("Pl.'s Reply").

[2] Because the plaintiff did not include a statement of facts in his Consolidated Complaint, and because the facts that give rise to this case are not entirely ascertainable from the plaintiff's Consolidated Complaint, see generally Compl., the majority of the following facts are taken from the MSPB's initial decision issued on February 5, 2016, see Defs.' Mot., Exhibit ("Ex.") 1 (Initial Decision (Feb. 5, 2016)).

proposed removal, see id. at 4, and his employment was terminated thereafter.

Prior to and in conjunction with the filing of his cases in this district, the plaintiff has filed various actions with the MSPB, the Equal Employment Opportunity Commission, and the Federal Circuit seeking review of allegedly adverse employment actions. See Defs.' Mot. at 4–12. The plaintiff now seeks judicial review of the MSPB's decisions on his adverse employment action appeals, along with asserting additional claims for alleged constitutional and statutory violations. See generally Compl.

## II.   STANDARDS OF REVIEW

### A.   Motion to Dismiss Under Rule 12(b)(1)

"Federal [district] courts are courts of limited jurisdiction," Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994), and "[a] motion for dismissal under [Federal Rule of Civil Procedure] 12(b)(1) 'presents a threshold challenge to the court's jurisdiction . . . ,'" Morrow v. United States, 723 F. Supp. 2d 71, 75 (D.D.C. 2010) (Walton, J.) (quoting Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987)). Thus, a district court is obligated to dismiss a claim if it "lack[s] . . . subject-matter jurisdiction[.]" Fed. R. Civ. P. 12(b)(1). Because "it is . . . presumed that a cause lies outside [a federal court's] limited jurisdiction," Kokkonen, 511 U.S. at 377, the plaintiff bears the burden of establishing by a preponderance of the evidence that a district court has subject-matter jurisdiction, see Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992).

In deciding a motion to dismiss based upon lack of subject-matter jurisdiction, a district "court need not limit itself to the allegations of the complaint." Grand Lodge of the Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 14 (D.D.C. 2001). Rather, "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." Scolaro v. D.C. Bd. of Elections & Ethics, 104 F. Supp. 2d

18, 22 (D.D.C. 2000); see also Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005). Additionally, a district court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting [the] plaintiff the benefit of all inferences that can be derived from the facts alleged.'" Am. Nat'l Ins. Co. v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting Thomas v. Principi, 394 F.3d 970, 972 (D.C. Cir. 2005)). However, "the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than resolving a 12(b)(6) motion for failure to state a claim." Grand Lodge, 185 F. Supp. 2d at 13–14 (citation and internal quotation marks omitted).

**B.      Motion for Preliminary Injunction**

A preliminary injunction "is an extraordinary remedy that should be granted only when the party seeking the relief, by a clear showing, carries the burden of persuasion." Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 297 (D.C. Cir. 2006) (internal quotation marks and citation omitted). Therefore, "[t]he power to issue a preliminary injunction, especially a mandatory one, should be sparingly exercised." Dorfmann v. Boozer, 414 F.2d 1168, 1173 (D.C. Cir. 1969) (internal quotation marks omitted). "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." Sherely v. Sebelius, 644 F.3d 388, 392 (D.C. Cir. 2011) (alterations in original) (quoting Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)).

**C.      Motion for Sanctions**

"[Federal Civil Procedure] Rule 11 sanctions may be imposed where a party files a pleading, motion[,] or other paper with the court for an improper purpose, that is unwarranted by

existing law, [ ] that is lacking evidentiary support," <u>Henok v. Chase Home Fin., LLC</u>, 926 F. Supp. 2d 100, 104 (D.D.C. 2013) (citing Fed. R. Civ. P. 11(b)(1)–(3)), or that is not "reasonably based on belief or a lack of information," Fed. R. Civ. P. 11(b)(4). "Rule 11 sanctions are an extreme punishment for filing pleadings that frustrate judicial proceedings." <u>Brown v. FBI</u>, 873 F. Supp. 2d 388, 408 (D.D.C. 2012) (quoting <u>Wasserman v. Rodacker</u>, No. 06-cv-1005 (RWR), 2007 WL 2071649, at *7 (D.D.C. July 18, 2007)). Although "'the district court is accorded wide discretion' in determining whether sanctions are appropriate," <u>Gomez v. Aragon</u>, 705 F. Supp. 2d 21, 23 n.2 (D.D.C. 2010) (quoting <u>Westmoreland v. CBS, Inc.</u>, 770 F.2d 1168, 1174 (D.C. Cir. 1985)), the test "under Rule 11 is an objective one: that is, whether a reasonable inquiry would have revealed that there was no basis in law or fact for the asserted claim," <u>Sharp v. Rosa Mexicano, D.C., LLC</u>, 496 F. Supp. 2d 93, 100 (D.D.C. 2007) (quoting <u>Reynolds v. U.S. Capitol Police Bd.</u>, 357 F. Supp. 2d 19, 23 (D.D.C. 2004)).

## D.     Motion to Strike

"Motions to strike are 'drastic remed[ies] that courts disfavor,' and the 'decision to grant or deny a motion to strike is vested in the trial judge's sound discretion.'" <u>Riddick v. Holland</u>, 134 F. Supp. 3d 281, 285 (D.D.C. 2015) (quoting <u>U.S. ex rel. Landis v. Tailwind Sports Corp.</u>, 308 F.R.D. 1 (D.D.C. 2015)). A court, either on its own volition or by a moving party, "may strike from a pleading an[y] insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Rule 12(f) itself does not require the striking of prejudicial matters, and although courts disfavor motions to strike, courts have granted such motions, but only upon a showing that parts of a pleading "are prejudicial or scandalous." <u>Nwachukwu v. Rooney</u>, 362 F. Supp. 2d 183, 190 (D.D.C. 2005). However, "absent a 'strong reason for so doing,' courts will generally 'not tamper with pleadings.'" <u>Id.</u> (quoting <u>Lipsky v.</u>

<u>Commonwealth United Corp.</u>, 551 F.2d 887, 893 (2d Cir. 1976)).

## III.    ANALYSIS

### A.    The Plaintiff's Motion to Strike

In his reply in support of his motion for sanctions, the plaintiff requests that this Court strike from the record both the defendants' motion to dismiss his Consolidated Complaint and their opposition to his motion for preliminary injunctive relief.  <u>See</u> Pl.'s Sanctions Reply at 1, 3. The plaintiff argues that such relief is warranted because the defendants' motion to dismiss is "grounded and anchored on fraud," <u>see</u> <u>id.</u> at 1, and because the defendants purportedly refused to serve him with a copy of their opposition to his motion for preliminary injunctive relief, <u>see</u> <u>id.</u> at 3.  For the following reasons, the Court denies the plaintiff's motion to strike.

Initially, the Court notes that "motions to strike only apply to pleadings."  <u>Nwachukwu</u>, 362 F. Supp. 2d at 190; <u>see also</u> Fed. R. Civ. P. 12(f) (providing that a court "may strike <u>from a pleading</u>" certain matters (emphasis added)).  "'Pleadings' are defined in Federal Rule of Civil Procedure 7(a) as various iterations of complaints, answers[,] and replies to answers[, and t]he definitions contained in Rule 7 do not admit motions to dismiss [or replies in support of motions] as 'pleadings.'"  <u>Burford v. Yellen</u>, 246 F. Supp. 3d 161, 182 (D.D.C. 2017); <u>see also</u> <u>Henok v. Chase Home Fin., LLC</u>, 925 F. Supp. 2d 46, 52–53  (D.D.C. 2013) (holding that "motions, affidavits, briefs, and other documents [are] outside of the pleadings and are not subject to being stricken" (alteration in original) (citation and internal quotation marks omitted)).  Thus, the plaintiff's motion to strike is not directed at pleadings that are subject to being stricken under Rule 12(f).  <u>See</u> Pl.'s Sanctions Reply at 1, 3 (seeking to strike the defendants' motion to dismiss and their opposition to his motion for preliminary injunctive relief).

Nonetheless, even if the defendants' motion to dismiss or their opposition to the

plaintiff's motion for preliminary injunctive relief were subject to Rule 12(f), the plaintiff's motion to strike would still provide no independent basis for striking these submissions.  See Burford, 246 F. Supp. 3d at 182.  Regarding the defendants' motion to dismiss, the plaintiff's motion to strike is largely duplicative of his opposition to the defendants' motion to dismiss, wherein the plaintiff claims that counsel for the defendants made fraudulent representations in their motion to dismiss.  Compare Pl.'s Sanctions Reply, with Pl.'s Opp'n.  However, these purportedly fraudulent representations, see, e.g., Pl.'s Sanctions Reply at 16 (claiming that counsel for the defendants misrepresented the facts when she argued that this Court does not have jurisdiction over MSPB final decisions regarding non-mixed case appeals), are simply legal arguments that this Court finds relevant to its evaluation of the plaintiff's claims and are not false or fictitious, see Fed. R. Civ. P. 12(f) (permitting a court to strike "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter").  Additionally, with respect to the plaintiff's request to strike from the record the defendants' opposition to his motion for preliminary injunctive relief because the defendants did not serve him a copy of that submission, see Pl.'s Sanctions Reply, Ex. B (E-mail from Barry Ahuruonye to Patricia McBride) (Sept. 22, 2017) (stating that counsel for the defendants failed to send him a copy of the opposition), the Court is perplexed as to how the plaintiff filed a response to the defendants' opposition on September 13, 2017, see generally Pl.'s Reply, if he never received a copy as he alleges in his e-mail on September 22, 2017.  Accordingly, the Court denies the plaintiff's motion to strike.

**B.      The Defendants' Motion to Dismiss the Plaintiff's Consolidated Complaint for Lack of Subject-Matter Jurisdiction**

Based on its review of the plaintiff's Consolidated Complaint, as well as the plaintiff's other submissions regarding the pending motions, including his opposition to the defendants' motion to dismiss, the Court concludes that the plaintiff is primarily seeking judicial review of

the MSPB's final decisions on his appeals of several allegedly adverse personnel actions.  See, e.g., Pl.'s Opp'n at 27 (asserting that he "is entitled to relief under Rule 60(b)(3)"); Compl. at 24 (arguing that the "evidence [ ] in these complaints that the defendants acted with reckless disregard for the veracity of their allegations and adverse actions and falsified government records w[ere] provided to [the] MSPB").  Specifically, the plaintiff seeks review of the following MSPB's final decisions:  (1) the MSPB's Initial Decision on November 17, 2016, that addressed his individual right of action appeals with the MSPB concerning the Department's allegedly improper garnishments of his wages in 2013 and 2015, the classification of his time and attendance records in 2015, charge of $91.03 to recover a medical benefit overpayment, and his proposed five-day suspension in 2014, see Defs.' Mot., Ex. 2 (Initial Decision (Nov. 17, 2016)), which became a final decision on December 22, 2016, see id., Ex. 5 (Federal Circuit Opinion (June 8, 2017)) at 6; (2) the MSPB's Final Order of December 8, 2016, that addressed the plaintiff's MSPB appeals of the Department's denial of a within-grade increase in November 2014, an absence without leave charge, the issuance of a letter of reprimand, an unsatisfactory performance rating, a leave restriction letter, a notice of proposed removal, and the allegedly unlawful termination of his medical and employment benefits, see id., Ex. 3 (Final Order (Dec. 8, 2016)); see also id., Ex. 1 (Initial Decision (Feb. 5, 2016)); and (3) the MSPB's Final Order of December 7, 2016, that addressed the plaintiff's MSPB appeal concerning the Department's termination of the plaintiff's employment, see id., Ex. 6 (Final Order (Dec. 7, 2016)), ECF No. 37-1.

Moreover, the plaintiff alleges that these adverse personnel actions are also violations of criminal and constitutional laws and several statutory schemes, including the Privacy Act, the APA, the Declaratory Judgment Act, and the All Writs Act.  See, e.g., Compl. at 1–3.

Additionally, the plaintiff asserts causes of actions related to fraudulent conduct allegedly committed by the defendants during the MSPB process.  See, e.g., id. at 1–2, 20–21, 23–24.[3]

The defendants contend that all of the plaintiff's claims should be dismissed based on the Court's lack of subject-matter jurisdiction.  See Defs.' Mot. at 3–4.  The Court will address each of the defendants' arguments in turn.

### 1.  The Plaintiff's Criminal Claims

As to the criminal claims asserted by the plaintiff against the defendants, see generally Compl.; see also Pl.'s Opp'n at 53–56 (discussing the various criminal violations purportedly committed by the defendants), the defendants argue that these claims should be dismissed due to the Court's lack of subject-matter jurisdiction because "private citizens lack Article III standing to bring claims under criminal statutes," Defs.' Mot. at 19.  The Court agrees.

It is well-settled that "a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution," and "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973).  And contrary to the plaintiff's contention, see Pl.'s Opp'n at 53 (asserting that the "prosecution of the defendants for their criminal actions [is] at the discretion of the [C]ourt," and that he "is entitled to the requisite economic and financial damage as a victim of [their] criminal conduct"), "[t]he power to decide when to investigate, and when to prosecute, lies at the core of the Executive's duty to see to the faithful execution of the laws," Cmty. for Creative Non-Violence v. Pierce, 786 F.2d 1199, 1201 (D.C. Cir. 1986).  Accordingly, the plaintiff cannot pursue criminal claims against the defendants, and

---

[3] In the Court's view, the plaintiff neither asserts separate causes of action under Title VII or the Whistleblower Protection Enhancement Act ("WPEA") of 2012 for the alleged adverse actions.  See generally Compl.  Rather, he contends that he alleged whistleblower reprisal, and at times discrimination, at the administrative level in support of his proposition that the Court has jurisdiction to review the MSPB's final decisions on his mixed-case appeals.  See generally Pl.'s Opp'n (arguing that the Court has jurisdiction over MSPB's decisions of mixed-case appeals).

the Court must therefore grant this aspect of the defendants' motion and dismiss these claims for lack of subject-matter jurisdiction.

### 2. The Plaintiff's Constitutional Claims

In his consolidated Complaint, the plaintiff asserts that the defendants' actions violated the rights granted to him by the First and Fifth Amendments of the United States Constitution. See e.g., Compl. at 3, 5, 7 (alleging constitutional violations based on the employment actions taken against him). The defendants contend that the "[p]laintiff's constitutional claims should be dismissed[] because . . . federal employees do not have any constitutional private right of action to challenge issues arising from their employment." Defs.' Mot. at 15. The Court agrees, because "[t]he Title VII remedy declared exclusive for federal employees" alleging claims of discrimination in their federal employment by the Supreme Court "in Brown v. GSA precludes actions against federal officials for alleged constitutional violations as well as actions under other federal legislation." Kizas v. Webster, 707 F.2d 524, 542 (D.C. Cir. 1983); see also King v. Holder, 941 F. Supp. 2d 83, 92 (D.D.C. 2013) (holding that Title VII preempts "both constitutional claims and common law tort claims arising out of the same conduct that forms the basis for a plaintiff's Title VII claim"). Furthermore, "the [Civil Service Reform Act ('CSRA')] 'is the exclusive remedy' for government employees who have suffered adverse personnel actions, 'even if it affords incomplete relief.'" Kursar v. Transp. Sec. Admin., 581 F. Supp. 2d 7, 16 (D.D.C. 2008) (Walton, J.) (quoting Hall v. Clinton, 143 F. Supp. 2d 1, 5 (D.D.C. 2001)). Therefore, because Title VII and the CSRA are the statutory schemes available to the plaintiff to challenge personnel actions occurring during his federal employment, the plaintiff may not proceed with his constitutional claims.

Notwithstanding this clear precedent precluding a federal employee from asserting

constitutional violations based on actions arising from his federal employment, the plaintiff argues that "[t]his Court [ ] has jurisdiction to review a constitutional violation caused by a federal employee pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)." Pl.'s Opp'n at 34. However, as the defendants correctly note, see Defs.' Mot. at 17, "when 'Congress has put in place a comprehensive system to administer public rights, has not inadvertently omitted damages remedies for certain claimants, and has not plainly expressed an intention that the courts preserve Bivens remedies,' courts 'must withhold their power to fashion damages remedies' pursuant to Bivens," Townsend v. United States, 236 F. Supp. 3d 280, 321 (D.D.C. 2017) (quoting Spagnola v. Mathis, 859 F.2d 223, 228 (D.D.C. 1988)). And Title VII, the CSRA, and the WPEA are all comprehensive statutory schemes that provide adequate relief for the plaintiff's claims arising from his federal employment, and therefore, preclude any Bivens claims based on alleged violations of the First and Fifth Amendments. See id. at 321–22 & n.18 (holding that Title VII and the CSRA barred the plaintiff's Bivens claims for constitutional violations); see also Davis v. Billington, 681 F.3d 377, 388 (D.C. Cir. 2012) (holding that the CSRA barred the plaintiff's Bivens claims); Cross v. Samper, 501 F. Supp. 2d 59, 62–63 (D.D.C. 2007) (noting that the plaintiff's "workplace issues," including whistleblower reprisal, were regulated by "comprehensive schemes . . . in the CSRA, Title VII and other similar statutes" that precluded the plaintiff from asserting constitutional claims). Accordingly, the Court must also grant this component of the defendants' motion and dismiss the plaintiff's constitutional claims.

### 3. The Plaintiff's Claims Under the Statutory Schemes Asserted

The plaintiff also asserts various claims under the Privacy Act, the APA, the All Writs Act, and the Declaratory Judgment Act. See generally Compl. The defendants contend that

because "all of [the p]laintiff's claims arise from this federal employment," his "statutory claims . . . are preempted" by "the comprehensive, exclusive, and preemptive effect of the CSRA." Defs.' Mot. at 23. Thus, according to the defendants, the "[p]laintiff's claims under any statute—other than the CSRA, civil rights statutes, or the WPEA—should be dismissed for lack of subject[-]matter jurisdiction." Id.

"The CSRA 'regulates virtually every aspect of federal employment and prescribes in great detail the protections and remedies applicable to adverse personnel actions, including the availability of administrative and judicial review.'" Mahoney v. Donovan, 824 F. Supp. 2d 49, 63 (D.D.C. 2011) (quoting Nyunt v. Chairman, Broad. Bd. of Governors, 589 F.3d 445, 448 (D.C. Cir. 2009)). As noted already, "Title VII 'provides the exclusive judicial remedy for claims of discrimination in federal employment.'" Kittner v. Gates, 708 F. Supp. 2d 47, 52 (D.D.C. 2010) (quoting Brown v. Gen. Servs. Admin., 425 U.S. 820, 834 (1976)); see also Brown, 425 U.S. at 834 (dismissing a plaintiff's claim under the Declaratory Judgment Act given the exclusive judicial remedy provided by Title VII for discrimination claims arising in federal employment). And, "the CSRA constitutes the exclusive 'remedial regime for federal employment and personnel complaints,' and 'a long line of cases requires that federal employees pursue employment and personnel challenges . . . through the procedures set up by the [CSRA], rather than under the APA.'" Mahoney, 824 F. Supp. 2d at 63 (omission and alteration in original) (quoting Nyunt, 589 F.3d at 448). Consequently, the plaintiff's federal employment and discrimination and retaliation claims asserted under the APA and the Declaratory Judgment Act are preempted by Title VII and the CSRA. See Kursar, 581 F. Supp. 2d at 15–16 (dismissing a plaintiff's claims under the APA and the Declaratory Judgment Act).[4]

---

[4] The plaintiff also claims that the defendants' actions violate the All Writs Act. See, e.g., Compl. at 5, 7. However,
(continued . . .)

However, the plaintiff's claims under the Privacy Act are not so readily resolved. In his Consolidated Complaint, the plaintiff alleges that various adverse personnel actions constitute violations of the Privacy Act. See, e.g., Compl. at 1, 3–5. Although the plaintiff does not identify under which provisions of the Privacy Act he brings these claims, it appears that he primarily bases his claims on (1) subsection (g)(1)(C) of the Privacy Act, which requires agencies to maintain accurate records (i.e., an inaccuracy claim), because he asserts that the purported adverse personnel actions were the results of fraudulent or inaccurate documents, see, e.g., id. at 3–5, 14–15, 23–24, and (2) subsection (g)(1)(D) of the Privacy Act, which prohibits the improper disclosure of information covered by the Privacy Act that adversely effects an aggrieved individual, because he alleges that the Department of Interior unlawfully disclosed fraudulent records to various entities and as a result caused him harm, see, e.g., id. at 4–5, 14–16, 23–24.[5]

With respect to the plaintiff's allegations regarding his Privacy Act inaccuracy claims, the Court starts with the premise "that the Privacy Act must not be used to circumvent the CSRA's framework for the review of adverse personnel actions." Feldman v. CIA, 797 F. Supp.

---

(. . . continued)
the All Writs Act permits federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." In re Tennant, 359 F.3d 523, 527 (D.C. Cir. 2004) (quoting 28 U.S.C. § 1651(a) (2012)). Accordingly, because the All Writs Act is not a law that the defendants could violate, as the defendants correctly note, see Defs.' Mem. at 31, the Court dismisses the plaintiff's claims asserted under this act.

[5] Subsection (g)(1)(C) establishes a cause of action when an agency

fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual.

5 U.S.C. § 552a(g)(1)(C) (2012). Subsection (g)(1)(D) establishes a cause of action when an agency "fails to comply with . . . [the] provision[s] of th[e Privacy Act]" in a manner that "ha[s] an adverse effect on [the plaintiff]." Id. § 552a(g)(1)(D).

2d 29, 45 (D.D.C. 2011); see also Kleiman v. Dep't of Energy, 956 F.2d 335, 338 (D.C. Cir. 1992) ("This court has refused to allow the exhaustive remedial scheme of the CSRA to be impermissibly frustrated by granting litigants, under the aegis of the Privacy Act or otherwise, district court review of personnel decisions judicially unreviewable under the CSRA." (internal quotation marks and citations omitted)). However, this "Circuit has recognized that 'the Privacy Act permits a federal job applicant [or employee] to recover damages for an adverse personnel action actually caused by an inaccurate or incomplete record.'" Feldman, 797 F. Supp. 2d at 45 (alteration in original) (quoting Hubbard v. EPA, 809 F.2d 1, 5 (D.C. Cir. 1986)). Thus, the Court must "'carefully analyze the asserted causation link [between an alleged inaccuracy and the adverse action] to be certain [it is] not exceeding [its] jurisdiction' under the Privacy Act." Id. (first alteration in original) (quoting Hubbard, 809 F.2d at 5). Accordingly, "the Court now turns to an evaluation of the plaintiff's factual allegations in support of his Privacy Act inaccuracy claims." Id.[6]

Here, the plaintiff alleges that the Department of Interior submitted various falsified or modified time sheets that resulted in the withholding or the garnishment of wages he needed to pay outstanding debts. See, e.g., Compl. at 3–5, 14–15, 23–24.[7] Based on its review of the

---

[6] To demonstrate an entitlement to relief for his Privacy Act inaccuracy claims,

> [the] plaintiff must show that "(1) he has been aggrieved by an adverse determination; (2) the [Department] failed to maintain his records with the degree of accuracy necessary to assure fairness in the determination; (3) the [Department's] reliance on the inaccurate records was the proximate cause of the adverse determination; and (4) the [Department] acted intentionally or willfully in failing to maintain accurate records."

Feldman, 797 F. Supp. 2d at 44 (quoting Chambers v. U.S. Dep't of Interior, 568 F.3d 998, 1006 (D.C. Cir. 2009)).

[7] Throughout his Consolidated Complaint, the plaintiff alleges that he suffered various adverse personnel actions due to the inaccurate or fraudulent records, constituting violations of the Privacy Act. See generally Compl. However, "[a]n adverse action is one resulting in the denial of a right, benefit, entitlement, or employment by an agency which the individual could reasonably have been expected to have been given if the record had not been deficient." Feldman, 797 F. Supp. 2d at 46 (quoting Lee v. Geren, 480 F. Supp. 2d 198, 210 (D.D.C. 2007)).

(continued . . .)

plaintiff's factual allegations, it appears to the Court that the plaintiff does not seek to challenge the actual garnishment or withholding of any wages or benefits as adverse personnel actions that were caused by an inaccurate record. Rather, the plaintiff seeks to challenge the making or creation of the purportedly falsified or modified time sheets as adverse personnel actions themselves. See, e.g., id. at 3 (asserting that his supervisor transmitted an allegedly false timesheet to the payroll office, which in turn withheld payment); id. at 4 (alleging that his supervisor made a timesheet correction several months after his termination that created a health benefits debt); id. at 15 (claiming that his supervisor "made a fraudulent retroactive 'time sheet correction' for the purpose of illegal wage garnishment"). And because "the CSRA preempts actions under the Privacy Act that seek review of adverse personnel decisions," Gerlich v. U.S. Dep't of Justice, 659 F. Supp. 2d 1, 14 (D.D.C. 2009) (quoting Lee, 480 F. Supp. 2d at 203), unless they are "actually caused by an inaccurate or incomplete records," Feldman, 797 F. Supp.

---

(. . . continued)
Consequently, certain of the plaintiff's alleged adverse personnel actions are not adverse actions for the purposes of the plaintiff's inaccuracy Privacy Act claims, because the plaintiff does not allege that they were the product of inaccurate documents. See, e.g., Compl. at 8–10 (asserting that his supervisor's proposed five-day suspension constituted a Privacy Act violation but not alleging that inaccurate documents were involved); see id. at 13 (alleging that his supervisor's issuance of a letter of reprimand against him is a Privacy Act violation because the letter of reprimand contains a purportedly false allegation); id. at 17 (challenging the purported placement of a wage increase denial in the plaintiff's official file "to [allegedly] prevent [ ] payroll from processing a wage increase for the plaintiff," and human resources' alleged intentional processing of the termination of the plaintiff's health care benefits). And, "[i]t is well-established that, 'generally speaking, the Privacy Act allows for correction of facts but not correction of opinions or judgments.'" Doe v. U.S. Dep't of Justice, 660 F. Supp. 2d 31, 42 (D.D.C. 2009) (alteration in original) (quoting Mueller v. Winter, 485 F.3d 1191, 1197 (D.C. Cir. 2007)).

Furthermore, the plaintiff also asserts that various submissions of fraudulent affidavits, evidence, and testimony during the MSPB proceedings are violations of the Privacy Act. See, e.g., id. at 1–3, 6–8, 20, 23. However, these submissions were not relied on by the Department of Interior in any decision related to the plaintiff's employment. And, to the extent that the plaintiff seeks to use the Privacy Act to collaterally attack the MSPB's decisions on his appeals in which the MSPB allegedly relied on fraudulent submissions, such an attack is not permitted as the Privacy Act "cannot be used as a vehicle to 'correct' a substantive decision that went against an individual's interest." Byrnes v. Merit Sys. Prot. Bd., No. 04-cv-742, 2005 WL 486156, at *2 (D.D.C. Mar. 2, 2005); see also Doe, 660 F. Supp. 2d at 50 (dismissing in part the plaintiff's claim against the MSPB under the Privacy Act because "[h]is claim for damages against the MSPB invites the Court to penalize the [MSPB] for exercising its administrative discretion").

2d at 45, the Court must dismiss the plaintiff's Privacy Act inaccuracy claims.[8]

### 4. The Plaintiff's Claims Against the Individual Defendants

In his Consolidated Complaint, the plaintiff asserts a plethora of employment-related claims against several individual defendants—all of whom were also employees at the Department of Interior and interacted with the plaintiff in some capacity—for various employment actions they allegedly took against him. See, e.g., Compl. at 1–3 (noting certain actions of his supervisors such as the alleged falsification of timesheets for compensation). The defendants argue that dismissal for lack of subject-matter jurisdiction of all of the plaintiff's claims against the individual defendants is warranted because "federal employees bringing claims arising out of their federal employment cannot assert claims against individual defendants." Defs.' Mot. at 19. The Court yet again agrees with the defendants.

"Under Title VII, the only proper defendant [in an action by a federal employee] is the head of the federal agency that employed the plaintiff." Stewart v. Gates, 786 F. Supp. 2d 155, 164 (D.D.C. 2011); see also Gary v. Long, 59 F.3d 1391, 1399 (D.C. Cir. 1995) (holding that a federal employee's claim against an individual defendant "essentially merges with [his] claim against [the agency]" because an individual "cannot be held liable in his personal capacity"). Similarly, the CSRA precludes individual liability for claims regarding conduct committed within the scope of official duties. See Wood v. Am. Fed'n of Gov't Emps., 255 F. Supp. 3d 190, 199 (D.D.C. 2017) (dismissing the plaintiff's CSRA claims against an individual defendant because there were no allegations of conduct committed outside the scope of official duties).

---

[8] For his Privacy Act improper disclosure claims, the plaintiff asserts that various falsified or modified timesheets were disseminated to the Department of Interior's payroll office and created outstanding debts that were ultimately sent to debt collectors for wage garnishments. See, e.g., Compl. at 4–5, 14–16, 23–24. However, the Court is unaware of any legal authority that forbids a supervisor from disclosing a probationary employee's timesheet to its payroll office for the processing of the employee's compensation. And the Court is mystified as to how such disclosure would be a violation of the Privacy Act. Thus, the Court will dismiss those claims as well.

Moreover, "the Privacy Act does not authorize claims against individuals." Earle v. Holder, 815 F. Supp. 2d 176, 180 (D.D.C. 2011); see also id. (substituting the agency as the proper defendant).

Here, the plaintiff does not contend that the individual defendants acted outside the scope of their official duties; rather, with respect to each of the alleged adverse employment actions, the plaintiff asserts that the adverse actions occurred in the course of the individual defendants' performance of their official duties. See, e.g., Compl. at 10–11 (asserting claims against his supervisors for the allegedly unlawful withholding of accrued vacation and removal of duties for performance issues). Therefore, because the individual employees are not proper defendants that may be held liable under Title VII or the Privacy Act, and because the plaintiff alleges only that the named individual defendants acted within the scope of their official duties and are therefore not proper defendants for purposes of the CSRA, the Court must grant this component of the defendants' motion to dismiss the plaintiff's claims against the individual defendants for lack of subject-matter jurisdiction. Accordingly, the individual defendants are dismissed as parties in this case.

### 5. Exhaustion of the Plaintiff's Administrative Remedies

The defendants also contend that the "[p]laintiff has failed to plead, much less demonstrate that he has exhausted his administrative remedies for any CSRA claims," Defs.' Mot. at 23, and certain other claims, see id. at 25. The Court will address the defendants' arguments regarding the plaintiff's exhaustion of his administrative remedies in turn.

#### a. The Plaintiff's Alleged Failure to Exhaust Certain CSRA Claims Before the Completion of the MSPB Process

First, the defendants argue that certain of the plaintiff's CSRA claims were "filed [in this Court] before completing the MSPB process," and therefore, because "he failed to exhaust

[administratively] th[ose] claims . . . [they] should be dismissed." Id. at 24; see also id. (noting that these claims "were pending" before the MSPB when the plaintiff filed his complaint in this Court on September 1, 2016, asserting those claims and that the MSPB did not resolve those claims until November 17, 2016).[9]  The Court disagrees.

"It is well-established that a federal employee must exhaust his administrative remedies before filing suit in a federal court." Jones v. U.S. Dep't of Justice, No. 15-cv-5246, 2017 WL 3895064, at *1 (D.C. Cir. July 14, 2017).  And "[i]n certain cases, a federal employee affected by an adverse employment action  . . . may [ ] bring any related Title VII claims in connection with an appeal of the adverse employment action to [the] MSPB." Jones v. U.S. Dep't of Justice, 111 F. Supp. 3d 25, 30 (D.D.C. 2015); see also Townsend, 236 F. Supp. 3d at 299 n.9 ("When an employee complains of a personnel action serious enough to appeal to the MSPB and alleges that the action was based on discrimination, []he is said (by pertinent regulation) to have brought a mixed case." (citation and internal quotation marks omitted)).[10]  In other words, a federal employee "may file a mixed-case complaint . . . with [the] MSPB," and "[w]here, as here, a plaintiff first elects to file an appeal to [the] MSPB, an Administrative Judge is assigned to the case and 'takes evidence and eventually makes findings of fact and conclusions of law.'" Jones, 111 F. Supp. 3d at 31 (quoting Butler v. West, 164 F.3d 634, 638 (D.C. Cir. 1999)).  The MSPB

---

[9] In their motion, the defendants have identified two categories of CSRA claims asserted by the plaintiff that were pending before the MSPB when he filed his complaints in this Court.  The first category includes the plaintiff's: "[(1)] April 2015 removal, [(2)] March 26, 201[5], time and attendance issues, [(3)] alleged unlawful suspension in approximately March 201[5], and [(4)] related alleged instances of whistleblower reprisal." Defs.' Mot. at 23.  The second category includes the plaintiff's: (1) allegedly improper termination of medical benefits in April or May 2013, (2) the purportedly unlawful garnishment of his wages "for overpayment of health benefit contributions," and (3) his proposed "suspension for five days on September 25, 2014." Id. at 24.  Both categories of identified CSRA claims relate to the MSPB's initial decision on November 17, 2016, and the MSPB's final decision on December 7, 2016.  See supra Part III.B at 8.  Going forward, the Court will refer to these claims in these two categories as the plaintiff's pending CSRA claims.

[10] The "MSPB is an independent, quasi-judicial federal administrative agency that was established by the [CSRA] to review civil service decisions." Jones, 111 F. Supp. 3d at 31.

must then "within 120 days of the [complainant's] filing of the [mixed case] appeal, decide both the issue[s] of [Title VII related claims] and the appealable action." 5 U.S.C. § 7702(a)(1)(B)(v) (2012). However, "if the MSPB fails to render a judicially reviewable decision within 120 days from the filing of a mixed case appeal, the aggrieved party can pursue [his] claim in federal district court." Butler, 164 F.3d at 639.

Here, contrary to the defendants' position, see Defs.' Mot. at 24, the plaintiff was not required to complete the MSPB process for his pending CSRA claims before he filed his suits asserting those identical claims in this Court. Between December 2014 and August 2016, the plaintiff filed five appeals to the MSPB asserting the pending CSRA claims. See Defs.' Mot., Ex. 2 (Initial Decision (Nov. 17, 2016)) at 1–2; see also id., Ex. 5 (Federal Circuit Opinion (June 8, 2017)) at 5–6. Thereafter, on September 1, 2016, the plaintiff initiated this suit alleging violations based on some of those pending CSRA claims, and on October 11, 2016, he initiated another suit in this Court asserting violations based on the remainder of his pending CSRA claims. See id. at 23–24.[11] The MSPB consolidated the plaintiff's five appeals, and on November 17, 2016, approximately two years after the plaintiff filed his first appeal, it issued a decision on the merits of the plaintiff's claims. See id., Ex. 2 (Initial Decision (Nov. 17, 2016)); see also id., Ex. 5 (Federal Circuit Opinion (June 8, 2017)) at 2, 5–6. Thus, not having a resolution from the MSPB within the prescribed time period of 120 days, the plaintiff properly elected to seek judicial resolution of his pending CSRA claims in this forum. See Townsend, 236 F. Supp. 3d at 299 n.9 ("Section 7702 clearly express[es] Congress' desire that mixed cases should be processed expeditiously, and that complainants should have access to a judicial forum should their claims languish undecided in the administrative machinery." (alteration in original)

---

[11] On December 15, 2016, the Court consolidated these two cases. See generally Order (Dec. 15, 2016), ECF No. 10.

(citation and internal quotation marks omitted)).[12]  Therefore, the Court denies this component of the defendants' motion to dismiss the plaintiff's Consolidated Complaint, seeking dismissal for lack of subject-matter jurisdiction of the plaintiff's claims that were pending before the MSPB when he filed this case in this Court.

### b. The Plaintiff's Purported Waiver of Certain CSRA Claims

The defendants next argue that "[t]his Court does not have jurisdiction to hear non-mixed case appeals from [MSPB] final decisions alleging inappropriate adverse actions and [whistleblower] claims [as] the jurisdiction for such non-mixed claims rests solely with the Federal Circuit."  Defs.' Mot. at 25.  Thus, according to the defendants, certain of the plaintiff's remaining claims filed in this Court "should be dismissed for failure to properly exhaust administrative remedies and [for] lack of jurisdiction," id., because the plaintiff previously filed these claims with the Federal Circuit, which "indicated that it only had jurisdiction to entertain [those] claims because [the plaintiff] waived his discrimination claims," id. at 24; see also id. at 24–25 (claiming that the plaintiff, in his "district and circuit court filings . . . appears to have abandoned and not offered allegations to support his discrimination contentions in the underlying

---

[12] The Court notes that the plaintiff filed an appeal with the MSPB asserting one of his pending CSRA claims in August 2016.  See Defs.' Mot., Ex. 5 (Federal Circuit Opinion (June 8, 2017)) at 6 (appealing a "June 2013 bill and subsequent garnishment").  Consequently, the MSPB's decision on November 17, 2016, resolving that appeal was within the 120-day statutory time period, and therefore, the plaintiff did not timely exhaust his administrative remedies with respect to that claim before he instituted a cause of action asserting that claim in this Court.  Although dismissal of that claim for lack of subject-matter jurisdiction may be warranted, the Court nonetheless will permit the plaintiff to proceed with that claim at this juncture, given that (1) the MSPB has issued a ruling on the merits of that claim and (2) the Federal Circuit has reviewed that ruling and issued an opinion on the validity of that ruling.  See Butler, 164 F.3d at 643 (noting the benefit the district court receives, including the conservation of judicial resources when allowing the MSPB process to conclude); see also id. ("In this case . . . the MSPB's final decision was issued in December of 1994, a little more than two months after [the] appellant filed her complaint; the district court did not rule on her complaint, however, until February of 1997.  While this delay may not be typical, it reveals that the district courts can routinely benefit from MSPB expertise without running afoul of the unambiguous language of section 7702(e)(1)(B), and without disadvantaging parties who follow the letter of the statute's time line.").

MSPB actions").[13]  In response, the plaintiff contends that his appeals to the MSPB and the Federal Circuit were "mixed-case" appeals, and therefore, his claims are properly before this Court.  See Pl.'s Opp'n at 2; see also id. at 7 (asserting that he has a right to judicial review by this Court on both his discrimination claims and adverse employment actions claims).

The parties are correct that it is well-settled that MSPB "decisions are generally reviewed by the Court of Appeals for the Federal Circuit, [with the exception of] 'mixed cases' that involve both MSPB appeals and discrimination claims under Title VII . . . , [which] are reviewed in federal district court." Akosile v. Armed Forces Ret. Home, 141 F. Supp. 3d 75, 88 (D.D.C. 2015) (Walton, J.).  And the record before the Court regarding these claims clearly indicates that the plaintiff did in fact file mixed case appeals with the MSPB, because in addition to his challenges to the various personnel actions, he asserted claims of discrimination and reprisal. See Defs.' Mot., Ex. 5 (Federal Circuit Opinion (June 8, 2017)) at 14 n.5 (noting the plaintiff's allegations of discrimination and reprisal).  Thus, it would appear that these claims asserted by the plaintiff are properly before this Court.  However, as the defendants correctly note, see id. at 24, in regards to some of these claims, see supra Part III.B.5.a n.12 (claims one through four), the plaintiff waived his corresponding discrimination claims so that the Federal Circuit could review the merits of the MSPB's decision, see Defs.' Mot., Ex. 5 (Federal Circuit Opinion (June 8, 2017)) at 14 n.5 ("[A]lthough [the plaintiff] in these four appeals to the [MSPB] had alleged disparate treatment discrimination and retaliation for filing an [Equal Employment Opportunity] complaint, . . . [the plaintiff] has affirmatively waived his discrimination claims before this

---

[13] In their motion, the defendants note that these claims "includ[e] but [are] not limited to [the plaintiff's] (1) [ ] September 2014 proposed five-day suspension, (2) various 2015 debt notices and wage garnishments, (3) March 2015 time and attendance issues, (4) a 2013 bill for wage garnishment, (5) [a within-grade increase] denial, (6) [the] minimally successful performance rating, and (7) nine other alleged instances of whistleblower reprisal."  Defs.' Mot. at 24.

court."). Accordingly, because the plaintiff waived his discrimination claims before the Federal Circuit, and because the Federal Circuit issued a decision on the adverse personnel actions related to those claims, this Court must dismiss both sets of claims. See Otiji v. Heyman, 47 F. Supp. 2d 6, 7 (D.D.C. 1998) (holding that to allow the plaintiff to proceed with his discrimination claims after seeking review of his allegedly adverse personnel actions "would be to encourage tactics 'designed to circumvent the Federal Circuit's effort to prevent litigants from seeking, in this area of review of government personnel decision[s], two bites of the apple[, and s]uch tactics have been flatly disapproved by our Court of Appeals." (quoting Smith v. Horner, 846 F.2d 1521, 1524 (D.C. Cir. 1988))), aff'd, 203 F.3d 53 (D.C. Cir. 1999).[14]

Notwithstanding the plaintiff's waiver of his discrimination claims corresponding to certain alleged adverse personnel actions identified by the defendants, see supra Part III.B.5.a n.12, the record is not so clear that the plaintiff waived his discrimination claims concerning his within-grade increase denial and the minimally successful performance ratings, see Defs.' Mot., Ex. 4 (Federal Circuit Order (May 19, 2017)) at 2 (noting that, because of the allegations of discrimination and reprisal asserted in the underlying appeals to the MSPB, the plaintiff was presented with various options for judicial review including proceeding to a United States district court or the Federal Circuit). However, the record does indicate that the plaintiff proceeded with the filing of an appeal to the Federal Circuit regarding these two purportedly adverse personnel actions. See id. The Federal Circuit dismissed the plaintiff's appeal as untimely filed, see id. at 3, but it noted that "[i]f [the plaintiff] [ ] has entirely abandoned any discrimination claims raised in [that] case, he may still be able to obtain review of the [MSPB's] decision in [the Federal Circuit]," id. at 4 (emphasis added) (noting the steps the plaintiff could take to have the filing of

---

[14] Because the Court has dismissed these claims for lack of subject-matter jurisdiction, it need not consider the defendants' alternative argument that res judicata bars the plaintiff from asserting those claims in this Court. See Defs.' Mot. at 27–29.

his appeal to the Federal Circuit deemed timely).  Thus, it does not appear that the plaintiff

waived his discrimination claims with respect to his allegedly improper within-grade increase

denial and his performance and minimally successful performance ratings.  Accordingly, the

Court denies that aspect of the defendants' motion to dismiss for lack of subject-matter

jurisdiction and will permit the plaintiff to proceed with seeking judicial review of the MSPB's

final decision regarding those claims.

### c. The Plaintiff's Failure to Assert Certain Claims Regarding Fraudulent Conduct Before the MSPB

The defendants argue that some of the claims the plaintiff asserts in his Consolidated

Complaint are claims regarding fraudulent conduct allegedly committed by certain individuals

throughout the MSPB process that the plaintiff did not allege "in the underlying administrative

process," and "[t]herefore, th[o]se claims should be dismissed" because the plaintiff "did not

exhaust his administrative remedies with respect to [those] claims."  Defs.' Mot. at 26.[15]  The

Court agrees.

Although the plaintiff contends that he in fact asserted his claims of allegedly fraudulent

conduct before the MSPB, <u>see</u> Pl.'s Opp'n at 8–13, he only did so through letters he addressed to

the Office of the Clerk of the MSPB (the "Clerk's Office"), the Regional Director of the MSPB,

and the Attorney General, Deputy Attorney General, or Associate Attorney General, <u>see</u>

<u>generally</u> <u>id.</u>, Ex. A (Collection of Responses to Barry Ahuruonye Regarding His Complaints

Against Agency Attorney (the "Responses") (May 25, 2016)).  Construing the plaintiff's letters

as "a complaint" against an agency attorney and not as an attempt to "'raise the merits of [his]

---

[15] The defendants identify these claims as the plaintiff's "alleg[ations] that records and evidence were falsified and that his removal for performance [reasons] in April 2015 became effective without sufficient due process, claiming inconsistencies in dates in certain documents pertaining to the effective date of his purported April 2015 suspension and April 2015 performance-based removal."  Defs.' Mot. at 25.  The defendants also include the plaintiff's "alleg[ations] that numerous individuals made false statements in their affidavits submitted in proceedings before the MSPB."  <u>Id.</u>

appeals' to the Clerk of the Board," the MSPB's Clerk's Office advised the plaintiff that "it d[id] not have investigative authority" to investigate his claims of fraudulent behavior because the MSPB's "authority is limited to actions made appealable to it by law, rule, or regulation." Id., Ex. A (Responses) at 1. The MSPB's Clerk's Office then "assured [the plaintiff] that [his] appeals [would] receive a full and impartial review consistent with applicable law and regulations." Id., Ex. A (Responses) at 2. In response to the plaintiff's "complaint," the Regional Director of the MSPB informed the plaintiff that "the proper course is for the [administrative law judge] to adjudicate the appeal[, and i]f either party is dissatisfied with the [administrative law judge's] initial decision, then that party may file a petition for review pursuant to the [MSPB's] regulations." Id., Ex. A (Responses) at 3. Consequently, as the plaintiff did not properly raise these claims of allegedly fraudulent conduct at the administrative level, he failed to exhaust his administrative remedies as to those claims.[16] Therefore, the Court must dismiss those claims for lack of subject-matter jurisdiction. See Fernandez v. Donovan, 760 F. Supp. 2d 31, 36–37 (D.D.C. 2011) (dismissing certain of the plaintiff's claims for lack of subject-matter jurisdiction due to the plaintiff's failure to assert those claims at the administrative level).[17]

   In sum, the plaintiff has failed to exhaust his administrative remedies for the majority of

---

[16] In his opposition, the plaintiff contends that he filed a motion to disqualify agency counsel as well as a motion for sanctions that the administrative law judge denied. See Pl.'s Opp'n at 11. To the extent that the plaintiff makes this contention as an effort to demonstrate that he did assert his claims of fraudulent behavior at the administrative level, the Court is unpersuaded, particularly given that the agency counsel is not named as a defendant in this consolidated case.

[17] One of the cases consolidated in this matter involved the assertion of claims by the plaintiff against the MSPB. See Ahuruonye v. Merit Sys. Prot. Bd. et.al, Civil Action No. 17-284 (RBW). However, in his Consolidated Complaint, the plaintiff does not assert an identifiable claim against the MSPB. See generally Compl. In any event, if the plaintiff seeks to challenge the MSPB's appeal process or assert a due process claim against the MSPB, he has not identified a statute that "creates a cause of action against the MSPB for its processing of a case," Woodruff v. McPhie, 383 F. App'x 5, 6 (D.C. Cir. 2010), and therefore, the Court would not have to consider such a claim even if it was asserted.

his alleged CSRA claims, with the exception of the following claims: (1) the alleged unlawful letter of reprimand in July 2014, see Compl. at 13; (2) the within-grade increase denial in 2014, see id. at 16; (3) the unfavorable performance reviews, see id. at 6; (4) the unlawful pre-termination suspension in March 2015, see id. at 2; and (5) the unlawful termination in April 2015, see id. at 1, as well as the corresponding discrimination and retaliation claims. Accordingly, as only these claims survive the defendants' motion to dismiss for lack of subject-matter jurisdiction, the plaintiff may proceed with seeking judicial review of the MSPB's final decisions addressing these mixed case claims. See generally Defs.' Mot., Ex. 3 (Final Order (Dec. 8, 2016)); id., Ex. 6 (Final Order (Dec. 7, 2016)), ECF No. 37-1.[18]

### 6. The Plaintiff's Failure to Timely Seek Judicial Review

In his Consolidated Complaint, the plaintiff asserts that he was "discriminated and retaliated against" for engaging in "MSPB and EEO protected activities" when he was unlawfully denied a within-grade increase in December 2013 and given "a hoax performance rating" in May 2014 "to conceal the unlawful wage increase denial." Compl. at 22; see also id. (alleging that his supervisor issued the wage increase denial to purportedly disguise her own race and national origin discrimination, reprisal, harassment, and creation of a hostile work environment). The Court construes this allegation collectively as a request for judicial review of the MSPB's final decision issued on July 15, 2016, denying his appeals concerning his 2013 wage increase denial. See generally Ahuruonye v. Merit Sys. Prot. Bd. et.al, Civil Action No. 17-284, Complaint, Ex. A, Part I. To seek judicial review of this MSPB final decision, the plaintiff was required to file his civil action with this Court within thirty days from the date he

---

[18] In his Consolidated Complaint, the plaintiff seeks monetary damages for his supervisors' failure to respond to "Senator Barbara A. Mikulski's letters and inquiries" regarding his complaints of retaliation. Compl. at 21. This claim must be dismissed as well, because the Court is unaware of any legal authority that gives it jurisdiction to determine whether failure to respond to a United States senator's letter is a violation of law.

received notice of the MSPB's final decision.  See 5 U.S.C. § 7703(b)(2) (2012).  However, the plaintiff did not commence his action seeking review of that MSPB final decision until February 14, 2017, see generally Ahuruonye v. Merit Sys. Prot. Bd. et.al, Civil Action No. 17-284, Complaint (filed on Feb. 14, 2017), nearly seven months after he would have received notice of the MSPB's final decision.[19]  Therefore, because "[t]he statutory time limit contained in § 7703(b)([2]) is jurisdictional, and thus cannot be extended for any reason," Abou-Hussein v. Mabus, 953 F. Supp. 2d 251, 262 (D.D.C. 2013) (Walton, J.) (citing King v. Dole, 782 F.2d 274, 275–76 (D.C. Cir. 1986)), the Court cannot exercise jurisdiction over this claim.  Consequently, the Court must also dismiss this claim for lack of subject-matter jurisdiction.[20]

## C.    The Plaintiff's Motion for Preliminary Injunctive Relief

Through his motion for preliminary injunctive relief, the plaintiff requests that this Court "restore the status quo ante until the time the [C]ourt rules on the merit[s] of the complaints to alleviate the daily harm being suffered . . . and to mitigate the ongoing harm being suffered . . . by reinstating the plaintiff back to work with back pay and on paid administrative leave."  Pl.'s Mot. at 1.  The plaintiff argues that preliminary injunctive relief is warranted because "[t]he

---

[19] The plaintiff did not include as an exhibit the entire portion of the notice attached to the MSPB's final order that informs him of his right to file a civil action in district court seeking judicial review of the MSPB's final decision. See Ahuruonye v. Merit Sys. Prot. Bd. et.al, Civil Action No. 17-284, Complaint (filed on Feb. 14, 2017), Ex. A (Final Order (July 15, 2016)) at 1–12.  Nonetheless, because the plaintiff was able to provide a copy of the decision, the plaintiff apparently received a full copy of the decision and inadvertently failed to attach the entirety of the decision.  In any event, "[c]ourts generally assume that the final [MSPB] decision was mailed on the same day that it was issued . . . , and that the plaintiff received the decision either three or five days after it was mailed."  Ruiz v. Vilsack, 763 F. Supp. 2d 168, 171 (D.D.C. 2011) (citing, inter alia, Baldwin Cty. Welcome Ctr. v. Brown, 446 U.S. 147, 148 n.1 (1984) (per curiam)); see also McGary v. Hessler-Radelet, 156 F. Supp. 3d 28, 34 (D.D.C. 2016) ("[I]t is reasonable to presume that a recipient residing in the United States received [the MSPB final decision and] notice within three to five days of when it was sent.").  Thus, under the most generous presumption, the Court will presume that that the plaintiff received notice of this MSPB final decision and his right to seek judicial review in this district in July 2016.

[20] The defendants also seek dismissal of the plaintiff's Consolidated Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  See Defs.' Mot. at 29–32.  But, having dismissed under Rule 12(b)(1) all of the plaintiff's claims except for his claim for judicial review of the MSPB's final decision issued on December 8, 2016, see supra Part III.B, and because the defendants do not seek dismissal of that claim pursuant to Rule 12(b)(6), see Defs.' Mot. at 29–32, the Court need not consider the defendants' Rule 12(b)(6) arguments.

defendants have been having endless calamities and seemingly unpredictable situations leading to endless request[s] for motion[s] for enlargement of time." Id. The defendants in response argue that the plaintiff's request should be denied because, among other grounds, the plaintiff cannot demonstrate irreparable injury. See Defs.' Opp'n at 11.

"A district court weighing whether to grant a preliminary injunction must 'balance the strengths of the requesting party's arguments in each of the four required areas.'" LG Elecs. U.S.A., Inc. v. Dep't of Energy, 679 F. Supp. 2d 18, 26 (D.D.C. 2010) (quoting Chaplaincy of Full Gospel Churches, 454 F.3d at 297); see id. at 25–26 (providing that "the moving party must demonstrate (1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable harm without injunctive relief, (3) that an injunction would not substantially harm the defendants or other interested parties (balance of harms), and (4) that issuance of the injunction is in the public interest"). However, "a movant must demonstrate 'at least some injury' for a preliminary injunction to issue," Chaplaincy of Full Gospel Churches, 454 F.3d at 297 (quoting CityFed Fin. Corp. v. Office of Thrift Supervision, 58 F.3d 738, 747 (D.C. Cir. 1995)), and "[t]he basis of injunctive relief in the federal courts has always been irreparable harm," Sampson v. Murray, 415 U.S. 61, 88 (1974) (alteration in original) (citation omitted). "A movant's failure to show any irreparable harm is therefore grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief." Chaplaincy of Full Gospel Churches, 454 F.3d at 297.

Furthermore, "[t]he party seeking a preliminary injunction must make two showings to demonstrate irreparable harm. First, the harm must be 'certain and great,' 'actual and not theoretical,' and so 'imminen[t] that there is a clear and present need for equitable relief to prevent irreparable harm.'" League of Women Voters of U.S. v. Newby, 838 F.3d 1, 7–8 (D.C.

Cir. 2016) (second alteration in original) (quoting Chaplaincy of Full Gospel Churches, 454 F.3d at 297). Additionally, "the harm 'must be beyond remediation.'" Id. at 8 (quoting Chaplaincy of Full Gospel Churches, 454 F.3d at 297). Thus, "a litigant seeking a preliminary injunction must satisfy a 'high standard' for irreparable injury . . . [, and therefore] 'must show that the alleged harm will directly result from the action which the movant seeks to enjoin.'" ConverDyn v. Moniz, 68 F. Supp. 3d 34, 46 (D.D.C. 2014) (Walton, J.) (first quoting Chaplaincy of Full Gospel Churches, 454 F.3d at 297; then quoting Wis. Gas Co. v. FERC, 758 F.2d 669, 674 (D.C. Cir. 1985)).

The Court cannot conclude based on the record before it that the plaintiff has demonstrated the requisite irreparable harm needed for the issuance of a preliminary injunction. To show irreparable harm, the plaintiff states that he "has been out of work for more than two years," and as a consequence, he "is faced with an immediate and present danger in terms of dire financial and economic catastrophes" if his request for preliminary injunctive relief is not granted. Pl.'s Mot. at 2. He also asserts that his "efforts to work for other agencies have been effectively blocked by the defendants' [adverse employment actions]," id., and that he "can[not] earn an income from employment; which is the only source of his revenue," id. at 3. However, while the plaintiff's purported financial plight is unfortunate, "in general 'economic loss does not, in and of itself, constitute irreparable harm.'" ConverDyn, 68 F. Supp. 3d at 46 (quoting Wis. Gas. Co., 758 F.2d at 674); see also Farris v. Rice, 453 F. Supp. 2d 76, 79 (D.D.C. 2006) ("[G]iven the court's equitable powers to remedy for loss in employment through, for example, back pay and time in service credit, cases are legion holding that loss of employment does not constitute irreparable injury."). Although not having employment as a source of income for two years would create a financial loss that is quite significant, the plaintiff has not demonstrated

"how the harm [he] will suffer absent injunctive relief is in any way extraordinary," Jones v.

District of Columbia, 177 F. Supp. 3d 542, 547 (D.D.C. 2016), or that "circumstances

surrounding [his termination] . . . depart from the normal situation [such] that irreparable injury

might be found," Farris, 453 F. Supp. 2d at 80. And, while "harm to reputation can, in certain

circumstances, constitute irreparable injury," Jones, 177 F. Supp. 3d at 547, the plaintiff must

show that reputational harm is "concrete and corroborated, not merely speculative," Trudeau v.

FTC, 384 F. Supp. 2d 281, 297 (D.D.C. 2005). In essence, a plaintiff's "'vague and

unsupported' assertions of harm are not sufficient" for a finding of irreparable harm that justifies

injunctive relief. Jones, 177 F. Supp. 3d at 548 (quoting Brodie v. U.S. Dep't of Health &

Human Servs., 715 F. Supp. 2d 74, 84 (D.D.C. 2010)); see Brown v. District of Columbia, 888 F.

Supp. 2d 28, 33 (D.D.C. 2012) (denying preliminary injunctive relief, in part, because the

"plaintiff fail[ed] to present any evidence that, absent injunctive relief, her professional

reputation or ability to obtain future employment will be irreparably harmed beyond notional

assertions that they w[ould]").[21]

Even assuming that the plaintiff could demonstrate sufficient irreparable harm,

preliminary injunctive relief would nonetheless not be warranted because the plaintiff has not

shown that there is a substantial likelihood that he will prevail on the merits. See

---

[21] After filing his motion for preliminary injunctive relief, the plaintiff filed a notice on the docket indicating that he had received an eviction notice for failure to pay rent. See Exhibit of[] Truly Irreparable Harm [That] Will Occur in the Absence of an Injunction ECF 35 (filed Sept. 6, 2017) ("Notice"), ECF No. 40. The plaintiff's Notice indicated that there was a trial for the plaintiff's purported failure to pay rent scheduled for September 15, 2017. See id. at 3. Although the Court's failure to address the plaintiff's Notice earlier is unfortunate, the Court's analysis if issued earlier would have nonetheless been the same. Since the filing of the Notice, the plaintiff has not provided the Court with any further update as to the status of his landlord-tenant proceedings (i.e., whether he still remains unable to pay his rent or whether he was actually evicted). See Save Jobs USA v. U.S. Dep't of Homeland Sec., 105 F. Supp. 3d 108, 115 (D.D.C. 2015) (holding that the petitioner "left [the court] to speculate as to the magnitude of the injury, and speculation is not enough to turn economic loss into irreparable harm"). In any event, as the Court will explain further in its analysis, consideration of the four preliminary injunction factors weighs against the Court granting the plaintiff's motion. See Chaplaincy of Full Gospel Churches, 454 F.3d at 297 ("A district court must balance the strengths of the requesting party's arguments in each of the four required areas[, and only i]f the showing in one area is particularly strong, . . . may [a court] issue [an injunction] if the showings in [the] other areas are rather weak." (citation and internal quotation marks omitted)).

Robinson-Reeder v. Am. Council on Educ., 626 F. Supp. 2d 11, 14 (D.D.C. 2009) ("Indeed, '[w]ithout any probability of prevailing on the merits, the [p]laintiff['s] purported injuries, no matter how compelling, do not justify preliminary injunctive relief.'" (first alteration in original) (quoting Am. Bankers Ass'n v. Nat'l Credit Union Admin., 38 F. Supp. 2d 114, 140 (D.D.C. 1999))). As the Court previously concluded, the plaintiff's only remaining claims in this case are his claims for judicial review of the MSPB's final decisions issued on December 7 and 8, 2016, denying several of his mixed case appeals regarding adverse personnel actions. See supra Part III.B. And regarding those claims for judicial review of those final decisions denying his mixed case appeals, the plaintiff has not presented any evidence that the MSPB's final "decision was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[]; . . . obtained without procedures required by law, rule, or regulation being followed[]; or . . . unsupported by substantial evidence.'" Horn v. U.S. Dep't of Army, 284 F. Supp. 2d 1, 11 (D.D.C. 2003) (quoting 5 U.S.C. § 7703(c)). Rather, he asserts in various iterations that there was allegedly extensive and pervasive fraud in the MSPB process. See generally Compl. These allegations do not assist the Court in determining whether the MSPB decision was contrary to § 7703(c). See § 7703(c) (providing that a trial court shall review de novo a MSPB's final order or decision regarding mixed case appeals and make a determination as to whether the MSPB's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"). They also do not provide the Court with the necessary facts that would provide it with a "'substantial indication' of [the plaintiff's] likely success on the merits," Dodd v. Fleming, 223 F. Supp. 2d 15, 20 (D.D.C. 2002) (quoting Am. Bankers Ass'n, 38 F. Supp. 2d at 140), and without such indication, "there would be no justification for the court's intrusion into the ordinary processes of administration and judicial review," Am. Bankers Ass'n, 38 F. Supp. 2d at

140.

Furthermore, granting the plaintiff preliminary injunctive relief would substantially harm the defendants. It is a "well-established rule that the [g]overnment has traditionally been granted the widest latitude in the dispatch of its own internal affairs." Sampson, 415 U.S. at 83 (citation and internal quotation marks omitted); see also id. ("The [d]istrict [c]ourt, exercising its equitable powers, is bound to give serious weight to the obviously disruptive effect which the grant of the temporary relief awarded here was likely to have on the administrative process."). And, as the defendants note, granting the plaintiff his requested injunctive relief pemding the resolution of this matter "would severely compromise [the Department of Interior's] ability to make the most fundamental personnel decisions in dispatching [its] affairs." Defs.' Opp'n at 13; see also Farris, 453 F. Supp. 2d at 81 (finding "compelling and insurmountable the institutional harm attendant to judicial interference with federal personnel actions"). Moreover, the plaintiff has not demonstrated, and likely cannot demonstrate, any benefit to the general public if the Court granted his request for preliminary injunctive relief. Accordingly, because the plaintiff has not shown that the preliminary injunction factors tip the balance of equities in his favor, the Court must deny his motion for preliminary injunctive relief.

**D.      The Plaintiff's Motion for Sanctions**

Based on fraudulent representations allegedly made by counsel for the defendants in the defendants' motion to dismiss the plaintiff's Consolidated Complaint, the plaintiff requests that this Court sanctions defendants' counsel pursuant to Federal Rule of Civil Procedure 11. See Pl.'s Sanctions Mot. at 1–2. Simply, the plaintiff seeks sanctions because he contends that the legal arguments and statements made by counsel for the defendants in the defendants' motion to dismiss are "groundless and misleading." Id. at 2. The defendants in response argue that the

plaintiff's motion for sanctions "lack[s] merit." Defs.' Reply at 6. The Court agrees with the defendants.

As an initial matter, it does not appear that the plaintiff complied with the procedural safeguards of Rule 11(c)(2). "That provision states . . . that the allegedly offending party, after being served with the motion for sanctions, is to be given [twenty-one] days to withdraw or correct the challenged filing before the motion for sanctions is presented to the court." Phillips v. Mabus, 319 F.R.D. 36, 40 (D.D.C. 2016) (quoting Fed. R. Civ. P. 11(c)(2)). Here, the plaintiff has not demonstrated that he served counsel for the defendants with his motion for sanctions and afforded her twenty-one days to withdraw or correct the purportedly legally untenable arguments in the defendants' motion to dismiss before filing his motion for sanctions. Rather, the plaintiff contends that counsel for the defendants should have been aware of her allegedly fraudulent conduct because she was notified of it through his opposition to the defendants' motion to dismiss before he filed his motion for sanctions. See Pl.'s Sanctions Mot. at 2 (noting that the defendants' counsel's "fraudulent violation of Rule 11 has added a new controversy as detailed [in his opposition to the defendants' motion to dismiss, a]nd yet she had not withdrawn her known fraudulent submission to the court"). Clearly, this form of notice is not the notice required by Rule 11.

However, even assuming that the plaintiff actually complied with Rule 11's procedural requirements, the plaintiff has not demonstrated that counsel for the defendants failed to comply with her duty to present to the Court a motion that is well-grounded in legally tenable arguments. See Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393 (1990) ("Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well-grounded in fact, legally tenable, and not interposed for any

improper purpose." (internal quotation marks omitted)). Instead, the plaintiff uses his motion for sanctions as another attempt to dispute the legal arguments asserted by the defendants as to why the plaintiff's Consolidated Complaint should be dismissed. <u>See generally</u> Pl.'s Sanctions Mot. And as shown by the Court's analysis and determination that dismissal of the majority of the plaintiff's claims is warranted, <u>see</u> <u>supra</u> Part III.B, those successful legal arguments were neither groundless or misleading, and the same is true for those legal arguments on which the defendants did not prevail. Accordingly, the Court must deny the plaintiff's motion for sanctions.[22]

## IV.    CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the defendants' motion to dismiss the plaintiff's Consolidated Complaint. Specifically, the defendants' motion is denied with respect to the plaintiff's claim for judicial review of the MSPB's final decisions on his mixed case appeals involving the issuance of an allegedly unlawful letter of reprimand in July 2014, a within-grade increase denial in 2014, unfavorable performance reviews, an unlawful pre-termination suspension in March 2015, and his unlawful termination in April 2015. <u>See</u> <u>supra</u> Part III.B. The motion is granted in all other aspects. Additionally, the Court denies the plaintiff's motion for preliminary injunctive relief, motion for sanctions against counsel for the defendants, and motion to strike from the record the defendants' motion to dismiss and their opposition to his motion for preliminary injunctive relief.

**SO ORDERED** on this 1st day of May, 2018.[23]

REGGIE B. WALTON
United States District Judge

---

[22]  The Court cautions the plaintiff "that a frivolous Rule 11 sanction motion may itself be a violation of Rule 11," <u>Naegele v. Albers</u>, 355 F. Supp. 2d 129, 145 (D.D.C. 2005), and that a Rule 11 motion for sanctions or any other motion should not be "presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," and should include "claims, defenses, and other legal contentions warranted by existing law or by a nonfrivolous argument," Fed. R. Civ. P. 11(b)(1)–(2).

[23] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.