**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ ) | |
| BARRY AHURUONYE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 16-1767 (RBW) |
| ) | |
| UNITED STATES DEPARTMENT OF ) | |
| THE INTERIOR, ) | |
| ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**<u>MEMORANDUM OPINION</u>**

The plaintiff, <u>pro se</u>, brings this civil action against the defendant, the United States

Department of the Interior (the "Department"), seeking judicial review of various administrative

decisions regarding his employment.  On May 1, 2018, the Court issued a Memorandum Opinion

("Mem. Op.") and accompanying Order, which narrowed the plaintiff's claims that remain alive

to the following:

> the plaintiff's claim for judicial review of the [United States Merit Systems
> Protection Board's ("MSPB")] final decisions on his mixed case appeals
> involving [(1)] the issuance of an allegedly unlawful letter of reprimand in July
> 2014, [(2)] a within-grade increase denial in 2014, [(3)] unfavorable performance
> reviews, [(4)] an unlawful pre-termination suspension in March 2015, and [(5)]
> his unlawful termination in April 2015.

Mem. Op. at 33 (May 1, 2018), ECF No. 54; <u>see</u> Order at 1 (May 1, 2018), ECF No. 53; <u>see</u>

<u>generally</u> Consolidated Complaints: Case No. 16-cv-1767; Case No. 16-cv-2028; Case No. 17-

cv-284 ("Compl."), ECF No. 30.  Currently pending before the Court is the Plaintiff's Renewed

Motion for Summary Judgment ("Pl.'s Mot."), ECF No. 111, and the Defendant's Cross Motion

for Summary Judgment and Opposition to the Plaintiff's Motion for Summary Judgment on All

Claims ("Def.'s Mot."), ECF No. 114.  Upon consideration of the parties' submissions,[1] the

Court concludes for the following reasons that it must grant the Department's motion for

summary judgment and deny the plaintiff's motion for summary judgment as to all five of the

plaintiff's claims.

## I.   BACKGROUND

### A.   Factual History

The plaintiff identifies himself as an African American male of Nigerian national origin,

Pl.'s Mot. at 7, who in December 2011, was "appointed to a [General Schedule (']GS[')]-12

Grants Management Specialist position" in the United States Fish and Wildlife Service, an

agency within the Department, until his termination in April 2015.  Id. at 21; see Def.'s Facts ¶ 2;

see also Ahuruonye v. Dep't of the Interior, No. DC-1221-15-1012-W-1, 2016 WL 526740, at *2

(M.S.P.B. Feb. 5, 2016).  Throughout the course of his employment, the plaintiff filed several

complaints with the Department of Interior Office of the Inspector General ("DOIOIG"), the

Office of Special Counsel ("OSC"), and his supervisors, "alleg[ing] that his first-line supervisor,

Penny Bartnicki, [engaged in] illegal grant awards" related to the Mississippi River Delta

Management Strategic Planning Grant.  Pl.'s Mot. at 22; see Def.'s Facts ¶ 10.  During his

employment, the Department took several personnel actions against the plaintiff, including

issuing him a "letter of reprimand[,]" denying him "a within-grade increase[,]" issuing him

"unfavorable performance reviews[,]" allegedly placing him on a "pre-termination

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Defendant's Memorandum of Law in Support of its Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment ("Def.'s Mem."), ECF No. 114-1; (2) the Defendant's Statement of Material Facts ("Def.'s Facts"), ECF No. 114-2; (3) the Plaintiff's Combined Memorandum of Points and Authorities in Opposition to Defendants' Cross-Motion for Summary Judgment and Reply in Support of Plaintiff's Motion for Summary Judgment ("Pl.'s Opp'n"), ECF No. 116; and (4) the refiled Plaintiff's Combined Memorandum of Points and Authorities in Opposition to Defendants' Cross-Motion for Summary Judgment and Reply in Support of Plaintiff's Motion for Summary Judgment, ECF No. 117.

suspension[,]" and "terminati[ng]" him from his employment.  Pl.'s Opp'n at 2; <u>see</u> Def.'s Facts at 2–6.

On July 17, 2014, the plaintiff's then-supervisor, Ms. Bartnicki, issued him a letter of reprimand for "Failure to Follow Procedures and Failure to Follow Supervisory Instructions." Def.'s Mot., Exhibit ("Ex.") 1 (Letter of Reprimand for Failure to Follow Procedures and Failure to Follow Supervisory Instructions (July 17, 2014) ("Letter of Reprimand")) at 1; <u>see</u> Pl.'s Mot. at 10.   In the letter, Ms. Bartnicki stated that the plaintiff "did not follow [her] instructions and [ ] did not meet the July 16, 2014, 12:00 p.m. deadline to complete [all grant reviews and the filing of records.]"  Def.'s Mot., Ex. 1 (Letter of Reprimand) at 1.  Further, Ms. Bartnicki stated that in five separate emails, from April 15, 2014, to July 16, 2014, she reminded her staff, including the plaintiff, that "all filing must be completed and [ ] returned" by the July 16, 2014 deadline and emphasized that "these are not suggestions[;] . . . [t]hese are instructions that you must follow." <u>Id.</u>, Ex. 1 (Letter of Reprimand) at 1; <u>id.</u>, Ex. 1 (Letter of Reprimand) Attachments ("Atts.") at 5.[2]  Ms. Bartnicki's letter concluded by cautioning the plaintiff "that any future misconduct of this nature or other misconduct may result in more severe disciplinary action, including removal from [his] position." <u>Id.</u>, Ex. 1 (Letter of Reprimand) Atts. at 3.

In December 2014, pursuant to 5 U.S.C. § 5335(a)(1), the plaintiff was scheduled to receive a within-grade increase ("WIGI").  Pl.'s Mem. at 4; <u>see</u> Def.'s Facts ¶ 12; <u>see also</u> <u>Ahuruonye</u>, 2016 WL 526740, at *4.  On May 23, 2014, "[the Department] informed [the plaintiff] of its decision to deny his WIGI[.]" <u>Ahuruonye</u>, 2016 WL 526740, at *4.  According to the plaintiff, his "WIGI denial was due to his [unsatisfactory fiscal year (']FY[')] 2013

---

[2] The seven attachments to Exhibit 1 of the Department's motion do not contain page numbers.  Accordingly, for ease of reference, the Court will use the automatically generated page numbers assigned by the Court's ECF system when referring to material within all of the attachments to Exhibit 1.

performance evaluation[.]"  Pl.'s Mot. at 26.  In 2016, an Administrative Law Judge at the

MSPB found that the Department's decision to deny the plaintiff's WIGI was proper and "based

on the fact that the [Department] demonstrated that the [plaintiff] was not performing at an

acceptable level of competency" under 5 U.S.C. § 5335(a).  Ahuruonye, 2016 WL 526740, at *4;

see Def.'s Facts ¶ 12.

   The plaintiff received and refused to sign the notification of standards for his FY 2014

employee performance appraisal plan ("EPAP"), which detailed the critical elements and

performance standards for his position.  See Def.'s Mot., Ex. 2 (FY2014 Performance Appraisal)

at 1, 18; see also Def.'s Facts ¶¶ 15–17.  "Critical elements . . . [are elements that an employee's

supervisor] establishe[s] for each employee at the start of the performance year[,]" which hold

employees "accountable for work assignments and responsibilities of their position."  Def.'s

Mot., Ex. 2 (FY2014 Performance Appraisal) at 2.  For each critical element, an employee

receives one of the following rating levels: Exceptional, Superior, Fully Successful, Minimally

Successful, or Unsatisfactory.  Id., Ex. 2 (FY2014 Performance Appraisal) at 2.  "Performance

standards are expressions of the performance threshold[s], requirement[s], or expectation[s] that

must be met for each element at a particular level of performance."  Id., Ex. 2 (FY2014

Performance Appraisal) at 2.

   On November 28, 2014, the plaintiff received his summary rating for his 2014 EPAP, and

the review specified that the plaintiff received an "Unsatisfactory" rating in all three critical

elements on which he was evaluated.  Id., Ex. 2 (FY2014 Performance Appraisal) at 2; see also

Def.'s Facts ¶ 17.  In the summary rating, Ms. Bartnicki extensively outlined the plaintiff's

performance failures and detailed why he received an "Unsatisfactory" rating for Critical

Element #1, Critical Element #2, and Critical Element #3.  Def.'s Mot., Ex. 2 (FY2014

Performance Appraisal) at 5, 8, 12.  For Critical Element #1, Ms. Bartnicki stated that the

plaintiff "routinely had reoccurring inaccuracies in award letters . . . and general grant review[;]"

made errors in "start dates, effective dates and reporting periods, errors calculating total grant

funding . . . and errors in applying appropriate conditional statements[;]" "failed to follow the

[Coastal Impact Assistance Program] Standard Operating Procedures Manual[,]" despite

repeated instruction to follow program procedures and policies; and "during the performance

period[,] routinely failed to upload signed grant award letters."  Id., Ex. 2 (FY2014 Performance

Appraisal) at 2.  For Critical Element #2, Ms. Bartnicki stated that the plaintiff "failed to seek

additional information [for grant review under F12AF00597,]" failed to adequately review grant

number F12AF70150, and made a critical error during his review of grant number F12AF70099.

Id., Ex. 2 (FY2014 Performance Appraisal) at 8.  For Critical Element #3, Ms. Bartnicki stated

that "[the plaintiff] has repeatedly failed to follow written and verbal instructions regarding the

uploading of documents[;] "required repeated reminders to scan signed award letters and signed

grant checklists into the appropriate electronic grant file of record[;] "routinely fail[ed] to follow

written instructions to remedy deficiencies by specific deadlines[;] and "[failed to] consistently

respond to emails in a timely fashion."  Id., Ex. 2 (FY2014 Performance Appraisal) at 12.

Following the plaintiff's 2014 "Unsatisfactory" performance ratings, on January 12,

2015, Ms. Bartnicki issued the plaintiff a "60-day Performance Improvement Plan" ("PIP"),

which provided the plaintiff with an "explanation of [his] Unsatisfactory performance and [ ]

outline[d] the steps that [he] needed to take during the 60-day PIP period to raise [his]

performance to at least Minimally Successful[.]"  Plaintiff's Memorandum in Opposition to the

Defendant's Motion to Dismiss for Lack of Jurisdiction ("Pl.'s Mot. to Dismiss Opp'n"), ECF

No. 91, Ex. 1 (Proposed Removal - Unsatisfactory Performance (March 26, 2015) ("Proposed

Removal")) at 42–47; see Def.'s Facts ¶ 18.  Further, the PIP provided the plaintiff with "five specific assignments related to [his] critical elements[,]" which were designed to improve his performance to a minimally successful level.  Pl.'s Mot. to Dismiss Opp'n, Ex. 1 (Proposed Removal) at 42; see Def.'s Facts ¶ 18.

On March 26, 2015, several weeks after the 60-day PIP period expired, Ms. Bartnicki issued a Notice of Proposed Removal to the plaintiff informing him that she was proposing his removal from his position as a "Grants Management Specialist" for "failure to perform the duties of [his] job at an acceptable level of performance."  Pl.'s Mot. to Dismiss Opp'n, Ex. 1 (Proposed Removal) at 42–47; see Def.'s Facts ¶ 19. Specifically, Ms. Bartnicki stated that the plaintiff "failed to complete the assigned tasks in [his] January 12, 2015 [PIP] at the minimally successfully level" and failed to "attend a single [required] scheduled meeting [with his supervisor] during the PIP period."  Pl.'s Mot. to Dismiss Opp'n, Ex. 1 (Proposed Removal) at 42–47.  The Department asserts that the plaintiff was given the opportunity to respond to the proposed removal but failed to respond.  Def.'s Mot., Ex. 3 (Decision on Proposed Removal (April 25, 2015) ("Decision to Remove")) at 1.  Shortly after the plaintiff received notice of his proposed removal, Ms. Bartnicki stated that she placed him on administrative leave "[p]ursuant to the recommendation of [the] Employee Relation's Specialist, Marion Campbell[.]"  Pl.'s Mot. to Dismiss Opp'n, Ex. 1 (Declaration of Penny L. Bartnicki ("Bartnicki Decl.")) at 130.  On April 24, 2015, Thomas Busiahn, the Department Chief of the Division of Policy & Programs, issued the decision "to remove [the plaintiff] from [his] position[.]"  See Def.'s Mot., Ex. 3 (Decision to Remove) at 1.  In the decision, Mr. Busiahn concluded that the plaintiff's removal was warranted because he "failed to bring his performance up to at least the Minimally Successful level [of performance] during the course of the [January 12, 2015] PIP."  Id.

B.      **Administrative History**

Following his termination, the plaintiff "filed dozens of complaints and appeals [with] the

[OSC], [the] Equal Employment Opportunity Commi[ssion] [('EEOC')], and the [MSPB,]" Pl.'s

Mot. at 21–22, alleging that during his employment, the Department repeatedly discriminated

against him on the basis of his "[r]ace and [n]ational origin" and "retaliated against him [for]

engag[ing] in whistleblowing [and EEO] activity." Id. at 5–6; see generally Def.'s Facts.

Specifically, the plaintiff claims that (1) he was issued an "[u]nlawful [l]etter of [r]eprimand" in

July 2014, which "[c]ontain[ed] [f]alse and [m]alicious [a]cussations[,]" Pl.'s Mot. at 42; (2) the

Department "improperly denied him a [within-grade increase] that he was due to receive in

December 2014" because of his race and national origin and as "retaliation for [the plaintiff]

filing an EEO complaint[,]" Pl.'s Mem. at 2; (3) the Department issued him "an unsatisfactory

performance rating on November 28, 2014" in "retaliation for [the plaintiff] engaging in

protected [EEO and whistleblower] activity[,]" id. at 3; (4) "[he] was unlawfully placed on 30

days pre-termination [ ] suspension from [March 27, 2015] to [April 26, 2015,]" id. at 26; and (5)

he was "unlawful[ly] terminated [from employment] in April 2015[,]" id. at 2.

When addressing the plaintiff's claims in its 2016 decision, the MSPB Administrative

Law Judge concluded that: (1) "[t]he [Department ] established by clear and convincing evidence

that it would have issued the [plaintiff] a letter of reprimand [regardless of his protected

activity,]" Ahuruonye, 2016 WL 526740, at *12; (2) "the [Department] properly denied the

[plaintiff] a [within-grade increase] [because] of his [unfavorable] 2014 performance review[s,]"

id. at *3; (3) "the [Department] established by substantial evidence that [the plaintiff's

unsatisfactory] performance standards [were] valid[,]" id. at *6; (4) "the [Department]

established by clear and convincing evidence that it would have placed the [plaintiff] on leave

restriction [regardless of his protected activity,]" id. at *14; and (5) "[the plaintiff's] proposed removal [and eventual removal] was [valid and] based on [ ] [his] poor performance[,] his inability to complete [his] assigned tasks[, and his] fail[ure] to properly complete . . . the PIP requirements[,]" id. at *13.

## C.    Procedural History

On January 12, 2021, the Court, in accordance with the parties' requests, issued a summary judgment briefing schedule, which required, inter alia, that the plaintiff file his motion for summary judgment on or before January 19, 2021, and that the Department file its combined opposition to the plaintiff's motion for summary judgment and cross-motion for summary judgment on or before February 17, 2021.  Order at 1–2 (Jan. 12, 2021), ECF No. 107.  On January 19, 2021, the plaintiff timely filed his motion for summary judgment, which the Court denied without prejudice because it was not in compliance with Local Civil Rule 7(e).[3]  Order at 1–2 (Jan. 29, 2021), ECF No. 110.  On January 29, 2021, the Court ordered the plaintiff to file his renewed motion for summary judgment on or before February 12, 2021, and further ordered the Department to file its combined opposition to the plaintiff's renewed motion for summary judgment and cross-motion for summary judgment on or before March 12, 2021.  Id.  The plaintiff filed his renewed motion for summary judgment on February 7, 2021, see Pl.'s Mot., the Department filed its cross-motion for summary judgment and memorandum in opposition to the

---

[3] As the Court explained:

> the plaintiff's [original] motion, not including attached exhibits, is 251 pages long. Under the local rules of this Court, "[a] memorandum of points and authorities in support of or in opposition to a motion shall not exceed 45 pages . . . without prior approval of the Court." LCvR 7(e). The plaintiff did not receive, nor move for, approval to file an expanded summary judgment motion. Although "the Court construes [the plaintiff's] papers liberally and holds [him] to less stringent pleading standards than those applied to lawyers, [his] pro se status does not relieve [him] of [his] obligation to comply with the Federal Rules of Civil Procedure and the local rules of this Court." Slovinec v. Am. Univ., 520 F. Supp. 2d 107, 111 (D.D.C. 2007).

Order at 1 (Jan. 29, 2021), ECF No. 110 (first alteration added).

plaintiff's motion for summary judgment on February 11, 2021, see Def.'s Mot., and the plaintiff

filed his memorandum in opposition to the Department's motion for summary judgment on

February 19, 2021, see Pl.'s Opp'n.  The parties' summary judgment motions are the subject of

this memorandum opinion.

## II.     STANDARD OF REVIEW

The Court must grant a motion for summary judgment "if the movant shows that there is

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(a).  "A fact is material if it 'might affect the outcome of the suit under

the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party.'"  Steele v. Schafer, 535 F.3d

689, 692 (D.C. Cir. 2008) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

When ruling on a motion for summary judgment, the Court must view the evidence in the light

most favorable to the non-moving party.  See Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir.

2006) (citing Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 150 (2000)).  The Court must

therefore draw "all justifiable inferences" in the non-moving party's favor and accept the non-

moving party's evidence as true.  Anderson, 477 U.S. at 255.  The non-moving party, however,

cannot rely on "mere allegations or denials," Burke v. Gould, 286 F.3d 513, 517 (D.C. Cir.

2002) (quoting Anderson, 477 U.S. at 248), but must instead present specific facts "such that a

reasonable [factfinder] could return a verdict for the non[-]moving party[,]" Grosdidier v. Broad.

Bd. of Governors, Chairman, 709 F.3d 19, 23 (D.C. Cir. 2013) (quoting Anderson, 477 U.S. at

248).  Thus, "[c]onclusory allegations unsupported by factual data will not create a triable issue

of fact."  Pub. Citizen Health Rsch. Grp. v. Food & Drug Admin., 185 F.3d 898, 908 (D.C. Cir.

1999) (Garland, J., concurring) (alteration in original) (quoting Exxon Corp. v. Fed. Trade

Comm'n, 663 F.2d 120, 127 (D.C. Cir. 1980)).  If the Court concludes that "the non[-]moving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then the moving party is entitled to summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Thus, when "ruling on cross-motions for summary judgment, the [C]ourt shall grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed." Shays v. Fed. Election Comm'n, 424 F. Supp. 2d 100, 109 (D.D.C. 2006).

In applying the above framework, the Court is mindful of the fact that the plaintiff is proceeding in this matter pro se.  This appreciation is required because the pleadings of pro se parties are "to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted).  Furthermore, all factual allegations by a pro se litigant, whether contained in the complaint or other filings in the matter, should be read together in considering whether to grant a dispositive motion.  See Richardson v. United States, 193 F.3d 545, 548 (D.C. Cir. 1999).  Nonetheless, "when faced with a motion for summary judgment," a pro se litigant "must comply with the Federal Rules of Civil Procedure and this Court's local rules . . . regarding responding to statements of material fact and marshalling record evidence that establishes each element of his claim for relief[.]" Hedrick v. Fed. Bureau of Investigation, 216 F. Supp. 3d 84, 93 (D.D.C. 2016) (citations omitted); see McNeil v. United States, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

### III.    ANALYSIS

The plaintiff argues that he is entitled to summary judgment because the undisputed facts "[m]ake [c]lear [t]hat the [Department] discriminated and retaliated against the [him.]"  Pl.'s Mem. at 31.  In response, the Department opposes the plaintiff's motion and argues that it is entitled to summary judgment because the undisputed facts do not "prove that [the plaintiff] was subjected to discrimination . . . and retaliation."  Def.'s Mot. at 1.  More specifically, the Department asserts that the "[p]laintiff cannot overcome the [Department's] legitimate and non-discriminatory reasons for its employment decisions related to him."  Id.

As noted above, the claims the Court must now evaluate are as follows: judicial review of the MSPB's final decisions on the plaintiff's mixed case appeals involving allegations of retaliation and discrimination in the issuance of an allegedly unlawful letter of reprimand in July 2014, a WIGI in 2014, unfavorable performance reviews, an unlawful pre-termination suspension in March 2015, and the plaintiff's unlawful termination in April 2015.  See Mem. Op. at 33 (May 1, 2018), ECF No. 54.  In undertaking this task, the Court "must take into account the entire administrative record and review [the MSPB final decisions] de novo."  Parker v. Hartogensis, Civil Action No. 17-520 (EGS/DAR), 2020 WL 10936270, at *6 (D.D.C. Mar. 23, 2020) (citing White v. Tapella, 876 F. Supp. 2d 58, 64 (D.D.C. 2012)), report and recommendation adopted, 2021 WL 3931878 (D.D.C. Sept. 2, 2021).  Accordingly, the Court will first review the standards pertinent to its mixed-case discrimination and retaliation analysis before applying those standards to each of the plaintiff's remaining claims

### A.    Mixed-Case Standards

#### 1.  Discrimination

The Court will first recount the standards pertinent to the discrimination aspect of the Court's analysis of the plaintiffs' remaining mixed-case claims.  "Title VII 'provides the

exclusive judicial remedy for claims of discrimination in federal employment.'" Kittner v. Gates, 708 F.Supp.2d 47, 52 (D.D.C. 2010) (quoting Brown v. Gen. Servs. Admin., 425 U.S. 820, 834 (1976)); see also Brown, 425 U.S. at 834 (dismissing a plaintiff's claim under the Declaratory Judgment Act given the exclusive judicial remedy provided by Title VII for discrimination claims arising in federal employment). Under Title VII, it is an "unlawful employment practice for an employer[, including the federal government,] . . . to discriminate against any [employee] with respect to [his] compensation, terms, conditions, or privileges of employment, because of [his] race, color, religion, sex, or national origin." 42 U.S.C. § 200e-2(a)(1). Title VII also requires that "[a]ll personnel actions affecting employees or applicants for employment" in the federal government "shall be made free from any discrimination based on race, color, religion, sex, or national origin." Id. § 2000e-16(a). Although these two Title VII provisions differ in their precise language, the District of Columbia Circuit has held that "the two contain identical prohibitions." Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007).

When a plaintiff brings discrimination claims under Title VII and relies on circumstantial evidence to establish an alleged unlawful employment action, as the plaintiff does here, see generally Pl.'s Mot., the Court analyzes the claims under the three-part burden-shifting framework of McDonnell Douglas Corp. v. Green. See Jackson v. Gonzalez, 496 F.3d 703, 706 (D.C. Cir. 2007) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–05 (1973)); Chappell-Johnson v. Powell, 440 F.3d 484, 487 (D.C. Cir. 2006) (noting that "the Supreme Court sets out a burden-shifting approach [in McDonnell Douglas] to employment discrimination claims in cases where the plaintiff lacks direct evidence of discrimination"). Under the McDonnell Douglas framework, the plaintiff bears the initial burden of establishing his prima facie case of discrimination. 411 U.S. at 802; see Walker v. Johnson, 798 F.3d 1085, 1091 (D.C.

Cir. 2015); see also Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006).  To state a prima

facie case of discrimination, the plaintiff must establish "that (1) he is a member of the protected

class, (2) he suffered an adverse employment action, and (3) the unfavorable [adverse] action

gives rise to an inference of discrimination (that is, an inference that his employer took the action

because of his membership in the protected class.)"  Forkkio v. Powell, 306 F.3d 1127, 1130

(D.C. Cir. 2002) (citing Brown v. Brody, 199 F.3d 446, 452 (D.C. Cir. 1999)); see also Carroll v.

England, 321 F. Supp. 2d 58, 68 (D.D.C. 2004).  Once a prima facie case is established, then

"[t]he burden . . . must shift to the employer to articulate some legitimate, nondiscriminatory

reason" for its actions.  McDonnell Douglas, 411 U.S. at 802; Walker, 798 F.3d at 1092;

Holcomb, 433 F.3d at 896.  If the employer offers a legitimate, nondiscriminatory justification

for its action, the burden shifts back to the plaintiff to prove that the proffered reason was a

"pretext for discrimination," McDonnell Douglas, 411 U.S. at 805, and produce "sufficient

evidence for a reasonable jury to find that the employer's asserted nondiscriminatory [ ] reasons

was not the actual reason and that the employer intentionally discriminated [ ] against the

employee[,]" Walker, 798 F.3d at 1092 (internal quotation marks omitted).

        To demonstrate that the employer's proffered reason was pretextual, the plaintiff must

provide evidence from which a reasonable jury could find that the employer's reasons for acting

are "unworthy of credence."  Reeves, 530 U.S. at 143 (quoting Tex. Dep't of Cmty. Affairs v.

Burdine, 450 U.S. 248, 256 (1981); see Hairston v. Vance-Cooks, 733 F.3d 266, 272 (D.C. Cir.

2014) (noting that showing pretext "requires more than simply criticizing the employer's

decision[-]making process").  Further, it is not sufficient for the plaintiff to "show that a reason

given for a[n] action [was] not just, or fair, or sensible;" nor is it sufficient to challenge "the

'correctness or desirability' of [the] reasons offered."  Fischbach v. D.C. Dep't of Corrs., 86 F.3d

13

1180, 1183 (D.C. Cir. 1996) (quoting Pignato v. American Trans Air, Inc., 14 F.3d 342, 349 (7th

Cir. 1994)).  Rather, the plaintiff must provide evidence from which "a reasonable jury could

infer that the employee's given explanation was pretextual and that this pretext shielded

discriminatory motives."  Jackson, 496 F.3d at 707 (citations omitted).

      However, this Circuit has further clarified that in Title VII employment discrimination

cases,

> where the defendant proffers legitimate, non-discriminatory reasons for the
> challenged action, the court need not conduct the threshold inquiry into whether
> the plaintiff established a [prima facie] case of discrimination[; i]nstead, the court
> is required to analyze whether the defendant's asserted reason is in fact a
> legitimate, non-discriminatory explanation or whether it is simply a pretext
> for discrimination.

Furley v. Mnuchin, 334 F. Supp. 2d 148, 161 (D.D.C. 2018) (citing Brady v. Off. of Sergeant at

Arms, 520 F.3d 490, 494 (D.C. Cir. 2008) ("Lest there be any lingering uncertainty, we state the

rule clearly: In a Title VII disparate-treatment suit where an employee has suffered an adverse

employment action and an employer has asserted a legitimate, non-discriminatory reason for the

decision, the district court need not—and should not—decide whether the plaintiff actually made

out a prima facie case under McDonnell Douglas.") (emphasis in original).

      Although an employee need not have necessarily established a prima facie case of

discrimination where the employer has provided a legitimate non-discriminatory reason for the

alleged discriminatory action, the employee must still demonstrate that he suffered an adverse

employment action.  See Brady, 520 F.3d at 493.  Under Title VII's anti-discrimination

provision, an "adverse employment action [is an action that causes] a significant change in

employment status, such as hiring, firing, failing to promote, reassignment with significantly

different responsibilities, or a decision causing significant change in benefits."  Douglas v.

Donovan, 559 F.3d 549, 552 (D.C. Cir. 2009) (citations omitted); see also Forkkio, 306 F.3d at

1130 (noting that Title VII's anti-discrimination provision protects individuals only from employment-related discrimination).  Further, a plaintiff has suffered an adverse employment action if he experiences "materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm."  Forkkio, 306 F.3d at 1131 (citing Brown, 199 F.3d at 457).

## 2.  Retaliation

Having explained the pertinent discrimination standards, the Court will now recount the standards pertinent to the retaliation aspect of the Court's analysis of the plaintiffs' remaining mixed-case claims.  The plaintiff has argued that he has was subjected to "retaliation for whistleblowing and [EEO] activity."  E.g. Ahuruonye v. U.S. Dep't of Interior, No. DC-0432-15-0649-I-2, 2016 WL 7335421 (M.S.P.B. Dec. 7, 2016).  "Like claims of discrimination, claims of retaliation are governed by the McDonnell Douglas burden-shifting scheme."  Carney v. Am. Univ., 151 F.3d 1090, 1094 (D.C.Cir.1998) (citing McKenna v. Weinberger, 729 F.2d 783, 790 (D.C.Cir.1984)).  Indeed, Title VII includes a retaliation provision that makes it unlawful for an employer to retaliate against any employee "because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]."  42 U.S.C. § 2000e-3(a).  Thus, similar to Title VII discrimination claims, retaliation claims brought pursuant to Title VII that are based on circumstantial evidence trigger the McDonnell Douglas burden-shifting framework. 411 U.S. at 802–05; see Walker, 798 F.3d 1085, 1091 (D.C. Cir. 2015); see also Holcomb, 433 F.3d at 895.  Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of retaliation by showing "(1) that he engaged in [a] statutorily protected activity . . . ; (2) that he suffered a materially adverse action

by his employer; and (3) that a causal link connects the [protected activity and the materially adverse action]."  Jones v. Bernanke, 557 F.3d 670, 677 (D.C. Cir. 2009); see also Hamilton v. Geithner, 666 F.3d 1344, 1357 (D.C. Cir. 2012).  "Temporal proximity between an employer's knowledge of protected activity and an adverse personnel action may alone be sufficient to raise an inference of causation."  Harris v. Dist. of Columbia Water & Sewer Auth., 791 F.3d 65, 69 (D.C. Cir. 2015).  Once a prima facie case is established, the burden then shifts to the employer, who must articulate some legitimate and non-retaliatory reason for its actions.  Jones, 557 F.3d at 677.  If the employer meets its burden, the plaintiff must then prove that the proffered reason was a pretext for retaliation and must produce "sufficient evidence for a reasonable jury to find that the employer's asserted [ ] non-retaliatory reasons was not the actual reason and that the employer intentionally [ ] retaliated against the employee."  Walker, 798 F.3d at 1092 (internal quotation marks omitted).  This analysis applies both in the contexts of whistleblowing reprisal, [4] see Miller v. U.S. Dep't of Just., 842 F.3d 1252, 1257 (Fed. Cir. 2016) ("[A]ppeals brought under the [Whistleblower Protection Act (']WPA['])] operate in a burden-shifting framework."), and EEO reprisal, see Youssef v. Holder, 19 F. Supp. 3d 167, 198 (D.D.C. 2014) (applying the

---

[4] As the Federal Circuit has explained:

> The burden lies with the employee to show by a preponderance of the evidence that he or she made a protected disclosure that was a contributing factor to the employee's personnel action. If the employee establishes this prima facie case of reprisal for whistleblowing, the burden of persuasion shifts to the agency to show by clear and convincing evidence that it would have taken the same personnel action in the absence of such disclosure, which we sometimes refer to as a showing of independent causation.

Miller, 842 F.3d at 1257 (cleaned up).  Furthermore, the government's rebuttal must be evaluated by considering

> [1] the strength of the agency's evidence in support of its personnel action; [2] the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and [3] any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated.

Carr v. Soc. Sec. Admin., 185 F.3d 1318, 1323 (Fed. Cir. 1999).

McDonnell Douglas framework in assessing a federal agency's alleged retaliation for the filing of an EEO complaint).

Since the Department has provided legitimate, non-retaliatory reasons for taking the challenged personnel actions against the plaintiff—that is, the plaintiff's poor work performance—the Court need not conduct the threshold inquiry into whether the plaintiff established a prima facie case of retaliation, and instead must evaluate whether the plaintiff has produced sufficient evidence to enable a reasonably jury to find that the Department's asserted reasons were not the actual reasons for the adverse actions, but rather, a pretext for retaliation. See Brady, 520 F.3d at 494 ("Lest there be any lingering uncertainty, we state the rule clearly: In a Title VII disparate-treatment suit where an employee has suffered an adverse employment action and an employer has asserted a legitimate, non-discriminatory reason for the decision, the district court need not— and should not—decide whether the plaintiff actually made out a prima facie case under McDonnell Douglas.") (emphasis omitted).

As with Title VII discrimination allegations, although an employee need not have necessarily established a prima facie case of retaliation where the employer has provided a legitimate non-retaliatory reason for the alleged retaliatory action, the plaintiff must still demonstrate that he suffered an adverse employment action. See Brady, 520 F.3d at 493. Under Title VII's anti-retaliation provision, "adverse actions" are those that "produce an injury or harm" that is material, meaning that the action could "have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (quoting Rochon v. Gonzalez, 438 F.3d 1211, 1219 (D.C. Cir. 2006)) (other citation omitted); see also Forkkio, 306 F.3d at 1130 (noting that Title VII's anti-

17

retaliation provision encompasses broader actions than Title VII's anti-discrimination provision and does not require the action to be employment-related).

**B.      The Plaintiff's Remaining Claims**

As previously noted, the plaintiff's claims have been narrowed to the following events, which the Court will analyze in turn:

> the plaintiff's claim for judicial review of the [United States Merit Systems Protection Board's ("MSPB")] final decisions on his mixed case appeals involving [(1)] the issuance of an allegedly unlawful letter of reprimand in July 2014, [(2)] a within-grade increase denial in 2014, [(3)] unfavorable performance reviews, [(4)] an unlawful pre-termination suspension in March 2015, and [(5)] his unlawful termination in April 2015.

Mem. Op. at 33 (May 1, 2018), ECF No. 54; see Order at 1 (May 1, 2018), ECF No. 53.

**1.   July 2014 Letter of Reprimand**

Regarding the plaintiff's first remaining claim, he argues that he was issued an "[a]busive and [u]nlawful [l]etter of reprimand [that contained] [f]alse and [m]alicious [a]ccusations[.]" Pl.'s Mot. at 42.  The Department responds that it "provided numerous compelling lawful reasons for why the [letter] was issued to the [p]laintiff."  Def.'s Mem. at 11.

Here, the plaintiff attempts to demonstrate that, in receiving the July 17, 2014 letter of reprimand, he suffered an adverse employment action, simply claiming that, in this letter, Ms. Bartnicki "falsely accused [him] of [] 200 d[a]ys inaction on [a grant]" and the retaliation consisted of Ms. Bartnicki including this allegedly false information in his personnel file.  Pl.'s Mot. at 42.  Thus, the plaintiff poses the proposition that "placing false information in [an] employee's personnel file may form the basis for a retaliation claim."  Id.; see Mays v. New York City Police Dep't, 701 F. Supp. 80, 83–84 (S.D.N.Y. 1988)).  However, there is no evidence in the record that the letter of reprimand "affect[ed] the terms, conditions, or privileges of [the plaintiff's] employment or future employment opportunities such that a reasonable trier of

18

fact could find objectively tangible harm." Forkkio, 306 F.3d at 1131 (citation omitted).  Indeed, "even assuming that [information placed] in the file was false," the plaintiff does not provide "evidence [to establish] that [the information] was placed [in his personnel file] in retaliation for the [his] conduct."  Mays, 701 F. Supp. at 84 (concluding that the plaintiff had "not shown that the material [placed] in [his] file even arguably could have been placed there in retaliation for [his previous] filing.").

Regardless, the Court agrees with the Department that "[a]n analysis of whether [the] [p]laintiff engaged in protected activity is unnecessary [because] the [d]efendant has provided numerous compelling lawful reasons for why the [letter of reprimand] was issued to the plaintiff."  Def.'s Mem. at 11; see Brady, 520 F.3d at 494 ("In a Title VII disparate-treatment suit where an employee has suffered an adverse employment action and an employer has asserted a legitimate, non-discriminatory [or non-retaliatory] reason for the decision, the district court need not— and should not—decide whether the plaintiff actually made out a prima facie case under McDonnell Douglas.").  Specifically, the Department has presented evidence from which it can be readily concluded that the plaintiff was issued a letter of reprimand due to his repeated failure to follow his supervisor's instructions.  See Def.'s Mot., Ex. 1 (Letter of Reprimand) Atts. at 4– 18; see also Def.'s Mot., Ex. 1 (Letter of Reprimand) at 1–3.  The Department correctly alleges that it can prove the charge of "failure to follow instructions" by establishing that (1) the plaintiff was given proper instructions and (2) failed to follow them, without regard to whether the failure was intentional or unintentional.  Hamilton v. U.S. Postal Serv., No. PH-0752-95-0406-I-1, 1996 WL 593834, at *556 (M.S.P.B. Oct. 10, 1996); see Def.'s Mem. at 11.

Here, the Department established that the plaintiff was given "proper instructions" on what was expected of him on several occasions.  Hamilton, 1996 WL 593834, at *556.  First, on

April 15, 2014, Ms. Bartnicki emailed the plaintiff "a set of instructions of how to manage files, including their storage and physical location . . . ." Def.'s Mot., Ex. 1 (Letter of Reprimand) Atts. at 4–5; see also id., Ex. 1 (Letter of Reprimand) at 1. In her email, Ms. Bartnicki explicitly stated that "these are not suggestions[; t]hese are instructions that you must follow." Id., Ex. 1 (Letter of Reprimand) Atts. at 5. Second, on May 1, 2014, Ms. Bartnicki sent the plaintiff an email reiterating her previous April 15, 2014 email. Id., Ex. 1 (Letter of Reprimand) Atts. at 6–7. Third, on July 10, 2014, Ms. Bartnicki sent the plaintiff another email reiterating that "all grant review and filing must be completed and the files return[ed]. . . by noon. . . [on] July 16, 2014." Id., Ex. 1 (Letter of Reprimand) Atts. at 12. Fourth, on July 16, 2014, Ms. Bartnicki sent an email to the plaintiff stating that "today is the day to wrap up grant processing/close-out and [return] all grant files. . . by noon." Id. at 13. Thus, the Department has shown that it issued the plaintiff proper instructions of what was expected of him. Further, the Department established that the plaintiff "failed to follow the instructions" because he did not meet the required July 16, 2014 deadline, which then led to the issuance of the plaintiff's letter of reprimand on July 17, 2014. Def.'s Mem. at 12. Therefore, the Department has met its burden of establishing non-retaliatory and non-discriminatory reasons for issuing the plaintiff a letter of reprimand: his failure to follow his supervisor's instructions.

These proffered reasons shift the burden back to the plaintiff to demonstrate that the Department's asserted reasons are pretextual. See McDonnel Douglas, 411 U.S. at 805 (establishing that if the employer offers a legitimate justification for its personnel action, the burden shifts back to the plaintiff to prove that the proffered reason was a "pretext"). Ultimately, the plaintiff cannot overcome the Department's reason for issuing the letter of reprimand. While the plaintiff takes significant issue with the content of the letter, see, e.g., Pl.'s Mot. at 42–43, he

has not produced any information, let alone evidence, from which a "reasonable jury could find" that the issuance of the letter was based on discrimination or retaliation, <u>Mosleh v. Howard Univ.</u>, Civil Action No. 19-cv-0339 (CJN), 2022 WL 898860, at *7 (D.D.C. Mar. 28, 2022).

Accordingly, the Court must conclude that the Department is entitled to summary judgment on the plaintiff's claim regarding the July 2014 letter of reprimand.

### 2. Denial of 2014 WIGI

Regarding the plaintiff's second remaining claim, he argues that "the [Department] [unlawfully] denied his WIGI [based on] his race (African American) and national origin (Nigerian)[,]" in violation of Title VII's anti-discrimination provision. Pl.'s Mot. at 7. The plaintiff further argues that the denial of his WIGI was also based on retaliation for his whistleblowing activity on April 19, 2014, and for filing an EEO complaint. Pl.'s Mot. at 26. Under the <u>McDonnell Douglas</u> standard, 411 U.S. at 802–05, the plaintiff has met his initial burden and has successfully established a prima facie case of race and national origin discrimination under Title VII by showing that (1) he is a member of a protected class, African American and Nigerian; (2) he suffered an adverse employment action because the denial of his WIGI caused "a significant change in employment status," specifically with respect to his compensation and privileges of his employment, 42 U.S.C. § 2000e-2(a)(1) (to establish an adverse employment action, the plaintiff must show that he was discriminated against "with respect to his compensation, terms, conditions, or privileges of employment"); and (3) a reasonable fact-finder could assume that the denial of the plaintiff's WIGI could give rise to an "inference of discrimination[,]" <u>see</u> <u>Forkkio</u>, 306 F.3d at 1130 (citing <u>Brown</u>, 199 F.3d at 452); <u>see also</u> <u>Carroll</u>, 321 F. Supp. at 68. Likewise, the plaintiff has met his initial burden of successfully established a prima facie case of retaliation by showing that (1) he engaged in "statutorily protected activity" under 5 U.S.C. § 2302(b)(9) when he filed several appeals and

complaints with the OSC, the DOIOIG, and Board based on allegations of 5 U.S.C. § 2302(b)(8);
(2) he suffered a materially adverse action by the Department when he was denied his WIGI
because it would have been "likely to dissuade[ ] a reasonable worker from making or supporting
a charge of discrimination[,]" Burlington N., 548 U.S. at 68 (quoting Rochon, 438 F.3d at 1219)
(other citation omitted) and; (3) a causal link exists between his EEO complaints and the WIGI
denial because the Department knew about the EEO complaints through its receipt of emails and
the close proximity in time between when those events occurred, see Mitchell v. Baldridge, 759
F.2d 80, 86 (D.C. Cir. 1985) (noting that the plaintiff can establish the casual link element "by
showing that the employer had knowledge of the employee's protected activity, and that the
[retaliatory] personnel action took place shortly after that activity.").

      Because the plaintiff has cleared his initial hurdle under the McDonnell Douglas
standard, the burden now shifts to the Department to identify a legitimate and non-discriminatory
reason for denying the plaintiff his WIGI.  See McDonnell Douglas, 411 U.S. at 802; Holcomb,
433 F.3d at 896 (stating that if a plaintiff establishes a prima facie case, the burden shifts to the
employer to identify a legitimate, non-discriminatory reason on which it relied in taking the
complained-of action).  Here, the Department has met its burden by articulating a "legitimate,
nondiscriminatory reason" for denying the plaintiff his WIGI.  See McDonnell Douglas, 411
U.S. at 802; Walker, 798 F.3d at 1092.  Specifically, the Department has provided proof that the
plaintiff's poor work performance justified his WIGI denial, Def.'s Mem. at 14, because he was
not performing at an "acceptable level of competence[.]"  See 5 U.S.C. § 5335(a) (noting than an
agency can deny an employee's WIGI if he is not performing at "an acceptable level of
competence").  For the proof offered by the defendant to be sufficient, the Department has the
burden of proving by substantial evidence that the employee was not performing at an acceptable

level of competency.  See Romane v. Def. Cont. Audit Agency, 760 F.2d 1286 (Fed. Cir. 1985).

And, substantial evidence is "[t]he degree of relevant evidence that a reasonable person,

considering the record as a whole, might accept as adequate to support a conclusion, even though

other reasonable persons might disagree."  5 CFR § 1201.4(p).

 The Department has shown the requisite substantial evidence through the plaintiff's 2014

performance review, which shows that the plaintiff received a rating of "Unsatisfactory" on all

three Critical Elements on which he was evaluated.  Def.'s Mot., Ex. 2 (FY 2014 Performance

Appraisal Plan) at 2–12.  Furthermore, Ms. Bartnicki extensively explained why the plaintiff

received an "Unsatisfactory" rating, stating that he "had reoccurring inaccuracies in award letters

. . . and general grant review[,]" id., Ex. 2 (FY 2014 Performance Appraisal Plan) at 5, routinely

"failed to follow the [ ] Standard Operating Procedures Manual[,]" id., Ex. 2 (FY 2014

Performance Appraisal Plan) at 5, "repeatedly failed to follow written and verbal instructions

regarding the uploading of documents[,]" id., Ex. 2 (FY 2014 Performance Appraisal Plan) at 12,

"routinely fail[ed] to follow written instructions to remedy deficiencies by specific deadlines[,]

id., Ex. 2 (FY 2014 Performance Appraisal Plan) at 12, and "[failed to] consistently respond to

emails in a timely fashion," id., Ex. 2 (FY 2014 Performance Appraisal Plan) at 12.

 Having concluded that the Department has provided a legitimate reason for the plaintiff's

WIGI denial, the Court must also conclude that the plaintiff has failed to satisfy his subsequent

burden to establish that Department's reasons for denying his WIGI were not a "pretext for

discrimination."  See McDonnell Douglas, 411 U.S. at 805.  The only thing approaching

evidence that the plaintiff submits to support his position is that "an African American coworker,

Barry Gregory, was also denied a WIGI in 2013[,] and that at least three White employees were

granted their WIGI."  Pl.'s Mot. at 7, 15.  Even if true, this is not "sufficient evidence for a

reasonable jury to find that [the Department's] non-discriminatory reason was not the actual reason and that [the Department] intentionally discriminated" against the plaintiff on the basis of his race and national origin.  Brady, 520 F.3d at 494.  Rather, the plaintiff's claim is based on "allegations" that "are conclusory, vague and for the most part unsubstantiated."  Ginger v. District of Columbia, 527 F.3d 1340, 1347 (D.C. Cir. 2008); see also Greene v. Dalton, 164 F.3d 671, 675 (D.C. Cir. 1999) (stating that conclusory assertions and unsubstantiated allegations do not create genuine issue of fact precluding summary judgment).

Therefore, because the plaintiff has failed to overcome the Department's well-documented basis for denying his WIGI, the Court concludes that the Department is entitled to summary judgment on the plaintiff's claim that he was denied a 2014 WIGI.

### 3.  Unfavorable Performance Review

Regarding the plaintiff's third remaining claim, he argues that he incurred an adverse employment action by the issuance of his unfavorable November 28, 2014 performance review, which he asserts was a "[h]oax" and "[c]ontain[ed] [f]alse and [m]alicious [a]ccusations[.]"  Pl.'s Mot. at 37.  "[A]n employee suffers an adverse employment action if he experiences materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm."  Forkkio, 306 F.3d at 1131.  Furthermore, unfavorable performance reviews are not an adverse actions "when there is no change in benefits, or the performance rating was not tied to an employee's bonus[.]"  See Dorns v. Geithner 692 F. Supp. 2d 119, 133 (D.D.C. 2010), (citing Weber v. Battista, 494 F.3d 179, 186 (D.C. Cir. 2007).  Thus, "poor or downgraded performance evaluations . . . [do not constitute] actionable adverse employment actions unless they have affected the employee's grade or salary."  Na'im v. Rice, 577 F. Supp. 2d 261, 381 (D.D.C. 2008) (citing Taylor v. Small, 350 F.3d 1286, 1293 (D.C. Cir. 2003; but see Russell v. Principi,

257 F.3d 815, 819 (D.C. Cir. 2001) (holding that the plaintiff demonstrated an adverse action when her performance rating cost her a higher bonus).

The plaintiff asserts that "where negative performance reviews precede an eventual termination, they may constitute adverse actions."  Pl.'s Mot. at 38 (citing Winston v. Verizon Servs. Corp., 633 F.Supp.2d 42, 51 (S.D.N.Y. 2009); McBroom v. Barnes & Noble Booksellers, Inc., 747 F.Supp.2d 906, (N.D. Ohio 2010).  However, an eventual termination does not necessarily convert a prior unfavorable performance review into an adverse employment action. Compare Stephens v. Yellen, Civil Action No. 17-1252 (DLF), 2021 WL 5493024, at *5 (D.D.C. Nov. 23, 2021) ("[G]iven that [the plaintiff] received her performance  review just one week before her firing, and the negative comments in the review were repeated in the notice of termination, . . . the Court assumes that the negative performance review qualifies as an adverse action.") with Davis v. Yellen, Civil Action No. 08-447 (KBJ), 2021 WL 2566763, at *26 (D.D.C. June 22, 2021) (refusing to conclude that a letter of reprimand amounted to an "actionable adverse employment action," despite the plaintiff's later termination).  Here, the plaintiff fails to demonstrate that his poor performance review, at the time it was issued, affected his "salary, bonus, grade, or any other term or condition of [his] employment."  Brown v. Paulson, 597 F. Supp. 2d 67, 74 (D.D.C. 2009).  Instead, the plaintiff merely contends, conclusorily, that the poor review resulted in his denial of a promotion and training.  See Def.'s Mem. at 27, 38.  However, as already noted, "[a] low performance review . . . "typically constitute[s] adverse action[ ] only when attached to financial harms,'" Howard v. Kerry, 85 F. Supp. 3d 428, 434 (D.D.C. 2015) (quoting Baloch v. Kempthorne, 550 F.3d 1191, 1199 (D.C. Cir. 2008)), and a "bare, conclusory allegation that [the plaintiff] was denied [a] promotional . . . opportunity . . . does not discharge [his] burden to show that the" performance review was tied to

"financial harms[,]" <u>Taylor v. Solis</u>, 571 F.3d 1313, 1321 (D.C. Cir. 2009) (internal quotation marks omitted).

Even if the plaintiff could establish that his negative performance review was an adverse action, the Department has provided a legitimate, non-discriminatory and non-retaliatory reason for issuing the negative performance review.  <u>See</u> Def.'s Mot., Ex. 2 (FY 2014 Performance Appraisal Plan) at 2–12.  Specifically, the Department has shown that the plaintiff failed to meet a required deadline that was emphasized multiple times over several months.  <u>See</u> Def.'s Mot., Ex. 1 (Letter of Reprimand) at 1–3.  And, because the plaintiff fails to demonstrate that the Department's reason for the review is pretextual, <u>see</u> <u>McDonnell Douglas</u>, 411 U.S. at 805, he cannot carry his burden on this issue.

Accordingly, the Court must grant summary judgment for the Department on the plaintiff's claim regarding his unfavorable performance review.

### 4. March 2015 Pre-Termination Suspension

Regarding the plaintiff's fourth remaining claim, he argues that the Department "unlawfully plac[ed him] on [thirty] days pre-termination [] suspension" in March of 2015.  Pl.'s Mot. at 7.  Additionally, the plaintiff asserts that he did not receive pay during the period between his proposed removal on March 26, 2015, and the Department's decision to terminate his employment on April 26, 2015.  <u>Id.</u>  The Department responds that "the [alleged] pre-termination suspension . . . was the result of the confusion related to [the p]laintiff's status between his proposed removal . . . and the decision to remove him[.]"  Def.'s Mem. at 14. Specifically, the Department contends that "[o]riginally, [the plaintiff] was not placed on administrative leave following his Proposed Removal[,]" but after Ms. Bartnicki spoke with an Employee Relations Specialist, she placed the plaintiff on administrative leave following his proposed removal.  <u>Id.</u>  The Department asserts that the plaintiff was, in fact, never suspended,

but rather, was placed on administrative leave and "there is no evidence that indicates a pre-termination suspension [ever] occurred." Id. at 14–15.  And, with regard to the plaintiff's claim that he did not receive pay for the period between the proposed removal and the decision to remove him, the Department indicates that QuickTime records show that the plaintiff's claim is false and that he was paid administrative leave beginning on March 30, 2015.  Id. at 15.

Based on the existing record, the Court concludes that the plaintiff has not demonstrated that he suffered an adverse employment action by being placed on what he characterizes as a pre-termination suspension because he was, in fact, actually placed on administrative leave.  See Hunter v. District of Columbia, 905 F. Supp. 2d 364, 374 (D.D.C. 2012) (holding that brief periods of administrative leave do not "constitute actionable adverse employment actions.").  Indeed, the confusion regarding his status resulted from "a clerical mistake[—later corrected—]by a human resources employee who had no demonstrated retaliatory motive."  Ahuruonye, 2016 WL 526740.  And even if the plaintiff could establish that a pre-termination suspension that amounted to an adverse employment action did, in fact, occur, he has failed to present any evidence that shows that the Department's articulated non-discriminatory and non-retaliatory reason was a pretext.  See McDonnell Douglas, 411 U.S. at 805.  Accordingly, the Court muse conclude that the Department is entitled to summary judgment on this claim.

### 5.  April 2015 Termination

Finally, the plaintiff argues that he was discriminated and retaliated against through his "unlawful employment termination [on April 14, 2015.]"  Pl.'s Mot. at 21.  In opposition, the Department argues that the plaintiff's termination was "not motivated by discriminatory animus, but by the [Department's] desire to assist an employee that was failing to perform at a satisfactory level, and if those efforts failed, [then] to remove him from service under a performance[-]based action."  Def.'s Mem. at 15–16.

27

In support of its argument, the Department has presented legitimate, non-discriminatory reasons for its decision to terminate the plaintiff, namely, that he failed "to improve [his performance] over a 60-day period" after being given "ample opportunity" to improve.  Id. at 16–17.  The Department's evidence shows that the plaintiff was terminated because he performed unacceptably in his position, failed to follow his supervisors' instructions, and failed to complete his tasks in a timely manner.  See Def.'s Mot., Ex. 1 (Letter of Reprimand) at 1–3 (reiterating that the plaintiff failed to follow instructions and complete his work in a timely manner); Def.'s Mot., Ex. 1 Ex. 1 (Letter of Reprimand) Atts. at 4–13; Def.'s Mot., Ex. 2 (FY 2014 Performance Appraisal Plan) at 2–12 (reiterating the plaintiff's unsatisfactory performance); Pl.'s Mot. to Dismiss Opp'n, Ex. 1 (Proposed Removal) at 42–47 (proposing the plaintiff's removal from his position due to his failure to successfully complete his PIP); Def.'s Mot., Ex. 3 (Decision to Remove) at 1–2 (concluding that the plaintiff's removal was warranted based on the reasons in Ms. Bartnicki's proposed removal letter).

Additionally, the Department has satisfied the statutory requirements for terminating the plaintiff pursuant to 5 U.S.C. § 432.104.  See 5 U.S.C. § 432.104 (listing the requirements for "[a]ddressing [an employee's] unacceptable performance"); see also 5 C.F.R. § 432.103(h) (defining "unacceptable" performance as "performance of an employee that fails to meet established performance standards in one or more critical elements of [his] position").  First, the Department has "an approved performance appraisal system," which the plaintiff, as the Department correctly indicates, does not dispute.  See Def.'s Mem. at 16.  Second, the Department "communicated the performance standards and critical elements of his position to the [plaintiff]."  Id.; see Def.'s Mot., Ex. 2 (Employee Performance Appraisal Plan).  The Department first communicated the performance standards and critical elements to the plaintiff

in October 2013, when it provided him with a copy of the notification standards for his 2014

Employment Performance Plan, which he refused to sign.  See Def.'s Mot., Ex. 2 (Employee

Performance Appraisal Plan) at 1.  Additionally, in November 2014, the Department gave the

plaintiff a copy of his performance standards for FY 2014 and his employee performance

appraisal plan, which the plaintiff again refused to sign.  See Def.'s Mot., Ex. 2 (FY2014

Performance Appraisal) at 1, 18.  Third, on January 12, 2015, the plaintiff was issued a PIP,

which stated that his performance was unacceptable and afforded him a reasonable opportunity

to improve his performance within 60 days. See Pl.'s Mot. to Dismiss Opp'n, Ex. 1 (Proposed

Removal) at 42–47.  It was only after the plaintiff did not improve his performance within the

time allotted when his employment was terminated.  See Def.'s Mot., Ex. 3 (Decision to

Remove) at 1.

The Department's explanation for the plaintiff's termination shifts the burden back to him

to demonstrate that the Department's asserted reasons were not its actual reasons for terminating

him and that the Department intentionally discriminated and retaliated against him.  See Brady,

520 F.3d at 494.  The plaintiff has not carried this burden.  Instead, the plaintiff merely contends

that he "and Dr. Barry Gregorie, [who was] another African-American male employee who had

engaged in protected activities against [Ms.] Bartnicki were the only two employees under [Ms.]

Bartnicki's supervision [that were terminated.]"  Pl.'s Mot. at 16.  This assertion does not show

that the Department's justification for terminating the plaintiff was merely a pretext for

discrimination.  Rather, the assertion—while it could provide support for a prima facie case for

discrimination—is wholly insufficient for the Court to conclude that the reasons provided by the

Department for the plaintiff's termination were pretextual.  See McDonnell Douglas, 411 U.S. at

805.  Such conclusory statements cannot, without more, "demonstrate 'both that the [employer's

proffered] reason was false, and that discrimination was the real reason.'" <u>Hunter</u>, 905 F. Supp. 2d at 376 (quoting <u>Weber v. Battista</u>, 494 F.3d 179, 186 (D.C. Cir. 2007).  Accordingly, the Court must grant summary judgment to the Department on this issue.  Thus, the Department is granted summary judgment in full on all five of the plaintiff's remaining claims.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court must grant the Department's motion for summary judgment and deny the plaintiff's motion for summary judgment.

**SO ORDERED** this 31st day of May, 2022.[5]

REGGIE B. WALTON
United States District Judge

---

[5] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.